DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Proposed Attorneys for the Debtor*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Julie Cvek Curley, Esq

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:

                                                      Chapter 11

97-111 Hale, LLC,                              Case No. 15-22381 (RDD)

                          Debtor.
------------------------------------------------------------X
In re:

                                                        Chapter 11

100-114 Hale, LLC,                            Case No. 15-22382 (RDD)

                          Debtor.
------------------------------------------------------------X

## DECLARATION OF ELI BOBKER
## PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

ELI BOBKER, under penalties of perjury, declares and says:

1. I, through Checkmate Holdings, LLC, am the manager of Hale Club, LLC, which is the managing member of each of 97-111 Hale, LLC and 100-114 Hale, LLC, the above-captioned debtors and debtors-in-possession (the "Debtors"). As such, I am familiar with the Debtors' operations, businesses and financial affairs.

2. I submit this Declaration pursuant to Rule 1007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 1007-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York.

**LOCAL RULE 1007-2(a)(1)**

**Background of the Debtor**

3. The Debtors if reviewed separately (which they should not be) are each a "single asset real estate" debtor as such term is defined in Section 101(51B) of the Bankruptcy Code. 97-111 Hale, LLC owns the vacant lot located at 97-111 Hale Avenue, White Plains, New York and 100-114 Hale, LLC owns the adjacent vacant lot located at 100-114 Hale Avenue, White Plains, New York (collectively, the "Properties"). The Properties were simultaneously acquired and are managed by myself, with the assistance of my brother Ben Bobker and father Joe Bobker (the "Bobker Group"). Together as the Bobker Group, we own and develop commercial and residential properties on the East Coast and mid-West United States.

4. The Properties are located on the corner of Hale Avenue and Maple Avenue in the downtown White Plains area, next to *The Source Mall* and diagonal from *The Westchester Mall*.

5. In 2004, the Debtors purchased nine properties at 97-111 and 100-114 Hale Avenue, White Plains, New York financed in part with two notes, one from China Trust Bank ("China Trust") in the amount of $2,375,000 and another from Grand Pacific Finance Corp. ("Grand Pacific") in the amount of $1,650,000. In 2005, the Debtors refinanced the Properties with Sterling Real Estate Holding Company, Inc. ("Sterling") in the amount of $5,500,000 (the "Sterling First Mortgage").

6. Thereafter, the Debtors began hiring architects, zoning attorneys, engineers and other related professionals to prepare the necessary applications to obtain permission from the City of White Plains to develop the Properties. In February 2006, the Debtors obtained site approval from the City of White Plains to develop two 10-12 story condominium buildings on

2

the Properties consisting of 127 condominium units.

7. While the zoning applications were underway, the Properties were listed for sale with the brokerage house Marcus & Millichap resulting in an offer from Alexander Gurevich for $18.5 million.

8. During that time the Bobker Group was working with Grand Pacific on other unrelated projects, and mentioned the offer of $18.5 million to Grand Pacific, specifically with its senior loan officer and Vice President Belton Lee and its chairman Michael Lin.

9. Grand Pacific, through Messrs. Lee and Lin, urged the Debtors to reject the sale to Mr. Gurevich, and offered to provide financing to the Debtors that would match the $18.5 million offer to continue the development of the Properties.

10. Based upon the Bobker Group's past business transactions with Grand Pacific, the Debtors, instead of selling out at a significant profit, agreed to borrow $7.0 million from Grand Pacific and continue developing the project.

11. During that period, Grand Pacific, through Messrs. Lee and Lin, represented to <u>notify</u> the Debtors that they had "deep pocketed Asian investors" who were interested in investing in the project.

12. Negotiations led to an investment of $2 million from Global One Corp. and $1 million from 366 Madison Inc. in return for a 20% Membership interest in each of the Debtors. In addition to loan fees paid to Grand Pacific (and their agents) on the $7 million Grand Pacific loans, an introductory fee of one percent (1%) was paid to Grand Pacific for negotiating the $3 million investment.

3

**The August 16, 2006 Closing**

13. On August 16, 2006, the $7 million funding with Grand Pacific closed with a $5,362,500[1] loan (the "Grand Pacific Mortgage Loan") in the form of a second mortgage subordinate to the Sterling First Mortgage[2] and $1,637,500 as a "mezzanine" loan to non-debtor Hale Club, LLC (the "Grand Pacific Mezz Loan"; together, "the GP Loans").

14. In or about October 2006, Grand Pacific insisted, as a condition to its $7 million funding, that the Debtors borrow an additional $1 million from Sterling (the "$1M Sterling Loan", together with the Sterling First Mortgage, the "Sterling Loans"), to be used as an interest reserve to ensure that the Sterling First Mortgage remained current.

15. An "Amended and Restated Operating Agreement of 97-111 Hale, LLC" and "Amended and Restated Operating Agreement of 100-114 Hale, LLC" (collective, the "Operating Agreements") were executed for the closing. Pursuant to the Operating Agreements, The Bobker Family Trust and Hale Club LLC members each received "Membership Interest/Percentages" of 40% for an equity investment of $4 million, and United Asian (Class B Member), as nominee for Global One and 366 Madison received 10% "Membership Interest/Percentages" in each of the Debtor's LLC's for an equity investment of $3 million. United Asian received an additional 10% equity interest in its own name. The membership interests were subordinate to both the Sterling Loans and the GP Loans.

16. At the request of Global One and 366 Madison, the $3 million equity investment was made in the form of two non-recourse loans; $2 million from Global One Corp. ("Global One") to the Debtors in return for a 6.67% member interest in the Debtors, and $1 million from 366 Madison, Inc. ("366 Madison") to the Debtors, in return for a 3.33% member interest in the

---

[1] Guarantor was Joe Bobker.
[2] Guarantor was Eli Bobker and Ben Bobker.

4

Debtors.

17. Upon information and belief, and undisclosed to the Debtors and guarantors at the time of closing, Global One, 366 Madison and United Asian were shell companies owned and/or controlled by the owners and/or the senior management of Grand Pacific.

18. Upon information and belief, the reason Global One and 366 Madison appointed a nominee (United Asian) to hold their interests was to hide the true ownership from the staff of Grand Pacific and from, *inter alia,* KPMG, Grand Pacific's auditors.

19. The Operating Agreements expressly state that no member or affiliate may acquire any interest (including debt) in the Properties, other than in the name of the Debtors.

20. Upon information and belief, 366 Madison breached the terms of the Operating Agreements on December 28, 2007 by purchasing the $1,637,500 mezzanine loan outright from Grand Pacific and acquiring a $362,500 interest from Grand Pacific in its $5,362,500 second property mortgage.

21. Upon information and belief, Grand Pacific was aware of the terms of the Operating Agreements and that such transfer violated the terms thereof. The parties "papered" the sale to look like a participation.

22. In 2007, as the Sterling Loans were about to mature, the Debtors approached Grand Pacific to advance additional funds to either continue the mortgage interest payments to Sterling or pay off the Sterling mortgages. Grand Pacific, via Mr Lee, informed the Debtors that Grand Pacific did not have the funds to do so.

23. Instead, in or about January 2008, 366 Madison and Grand Pacific breached the express provisions of the Operating Agreements and purchased the Sterling Loans!

24. Grand Pacific bought the Sterling mortgages with funds sent by 366 Madison.

5

Upon information and belief, Grand Pacific acted as a "front" for 366 Madison because (a) 366 Madison was prohibited pursuant to Operating Agreements from acquiring debt on the Properties and (b) Sterling had an Inter-Creditor Agreement that only allowed Grand Pacific the right to purchase their mortgages in the event of a default.

25. Moreover, as an "Affiliate" of 366 Madison, Grand Pacific was also prohibited from acquiring the Sterling Loans pursuant to the express terms of the Operating Agreements of which they were fully aware.

26. As specified above, 366 Madison had secretly acquired the Grand Pacific Mezzanine Loan, and a $365,500 portion of the Grand Pacific First Mortgage. In addition, Grand Pacific (via 366 Madison) acquired the Sterling Loans. Each of these transactions, *inter alia*, expressly breached the Operating Agreements.

## Post Closing

27. On or about the middle of 2007, the Debtors and Grand Pacific began negotiating the pay-off of the $7 million Grand Pacific Loans. At the time, Grand Pacific's $7 million loans had been reduced, pursuant to the terms of the Operating Agreements, by accepting $2 million from 366 Madison.

28. When the Debtors offered Grand Pacific a full payoff of the $7 million, unaware of the $2 million pay-down by 366 Madison, one of its members, Grand Pacific instead demanded $10 million, a full 200% of the principal balance owed to Grand Pacific!

29. Grand Pacific's improper $10 million demand included a full reimbursement of 366 Madison's $2 million membership contribution in the LLC, a full reimbursement of Global One's $1 million membership contribution in the LLC, a full reimbursement of 366 Madison's $1,637,500 that was used to pay down the Grand Pacific mezzanine loan, and a full

6

reimbursement of the $362,500 that 366 Madison used to purchase a participation of Grand Pacific's $5,362,500 second property. <u>None of these amounts were owed to Grand Pacific at the time</u>.

30. By demanding that the Debtors pay an inflated balance of principal (and improper interest), Grand Pacific crippled the project and made it impossible for Debtors to pay off the loans.

31. Upon information and belief, when approached by third party potential buyers to assume or pay off the Grand Pacific debt, Grand Pacific continued to maintain that it was owed $10 million.

32. Upon information and belief, offers to buy the Properties were rejected by Grand Pacific even though such offers would have fully paid off the amount actually owed to Grand Pacific (including the Sterling Loans). Acceptance of any of these offers would have fully paid off all Grand Pacific mortgages including Sterling and totally relieved the Debtors (and guarantors) of any liability.

33. Upon information and belief, the Grand Pacific employees charged with negotiating the pay-off of the loan were unaware of the improper transactions listed above (e.g., the 366 Madison participation and secret funding of the Sterling Loans acquisition).

34. Even Grand Pacific's attorneys' admitted under oath that they were unaware of these facts when filing the initial complaints and obtaining judgments on the Sterling Loans and the Grand Pacific Mezzanine Loan, respectively.

35. Upon information and belief, the improper transactions were orchestrated by Grand Pacific, its senior management, officers, employees and owners in a traditional shell game where debt was switched to equity, and vice versa, in order to wipe out the Debtors equity in the

Properties.

### The Grand Pacific Lawsuits

36.  In 2009, Grand Pacific elected to pursue the remedy of collection as opposed to foreclosure, and commenced a collection proceeding on the $5.5 million and $1.0 million acquired Sterling loans and the $1,637,500 Grand Pacific mezzanine loan captioned <u>Grand Pacific Finance Corp. v 97-111 Hale, LLC, et al.</u> (Supreme NY, New York County, Index No. 601164/2009, the "<u>Collection</u> <u>Lawsuit</u>").  On May 23, 2011, a money judgment was entered in Grand Pacific's favor against the Debtors and the other co-defendants in the Collection Lawsuit in the sum of $13,710,123.36.

37.  After the Debtor's failed attempts to repay the Grand Pacific $7 million loan, Grand Pacific commenced a foreclosure proceeding on the $5,362,500 second mortgage in a proceeding encaptioned <u>Grand Pacific Finance Corp. v. 97-111 Hale, LLC</u> (Supreme NY, Westchester County, Index No. 8084/2009, the "<u>Foreclosure</u> <u>Lawsuit</u>").

38.  Although most of the Debtors' counter-claims in the Foreclosure Lawsuit have been dismissed, two significant counter-claims remain intact; (a) the Debtors' claim that the Sterling Loans acquired by Grand Pacific should be either expunged entirely or, at a minimum, considered a pay-off rather than an assumption and should thus be considered a disguised equity; and (b) the Debtors' claim against Grand Pacific for its bad faith dealings in demanding a payoff of the Sterling Loans in excess of what it was actually owed.

39.  Grand Pacific's conduct, breach of fiduciary duty, breach of contract, and bad faith dealings have forced the Debtors into financial distress and had rendered them unable to make payments on the $5,362,500 Grand Pacific second mortgage, and effectively wiped out the Bobker Group's personal investment in the Properties, amounting to more than $4 million, as well as deprived them of the millions in profit they would have made had they proceeded with

8

the sale to Gurevich.

40. The Debtors intend to use the bankruptcy proceeding to adjudicate the disputed claims in a single expedited claims objection and/or equitable subordination proceeding and thereafter refinance the Properties and raise additional capital as necessary to reinstate and complete the development of the Properties.

**LOCAL RULE 1007-2(a)(2)**

41. This case was not originally commenced under Chapter 7 or 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

**LOCAL RULE 1007-2(a)(3)**

42. Upon information and belief, no committee was organized prior to the order for relief in this Chapter 11 case.

**LOCAL RULE 1007-2(a)(4)**

43. A list of the names and addresses of the Debtors' 20 largest unsecured claims, excluding those who would not be entitled to vote at a creditors' meeting and creditors who are "insiders" as that term is defined in 11 U.S.C. Section 101(31) is annexed hereto as **Schedule I**.

**LOCAL RULE 1007-2(a)(5)**

44. A list of the names and addresses of the five largest secured creditors is annexed hereto as **Schedule II**.

**LOCAL RULE 1007-2(a)(6)**

45. The Debtors' recent balance sheet is annexed hereto as **Schedule III**.

**LOCAL RULE 1007-2(a)(7)**

46.     There are no publicly held securities of the Debtor.

**LOCAL RULE 1007-2(a)(8)**

47.     None of the Debtors' property is in the possession of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity.

**LOCAL RULE 1007-2(a)(9)**

48.     The Debtors own property located at 97-111 and 100-114 Hale Avenue, White Plains, New York.

**LOCAL RULE 1007-2(a)(10)**

49.     The Debtor's books and records are located at 11 East 36th Street, Suite 100B New York, New York 10016.

**LOCAL RULE 1007-2(a)(11)**

50.     The following lawsuits are currently pending against the Debtors:

Grand Pacific Finance Corp. v 97-111 Hale, LLC, et al., Supreme Court of the State of New York, New York County, Index No. 601164/2009

Grand Pacific Finance Corp. v. 97-111 Hale, LLC, et al., Supreme Court of the State of New York, Westchester County, Index No. 8084/2009

Cortelessa v. 100-114 Hale, LLC, et al., Supreme Court of the State of New York, Westchester County, Index No.62473/2012

**LOCAL RULE 1007-2(a)(12)**

51.     The Debtors are currently managed by the Bobker Group, who has done so since the Debtors' formation.

**LOCAL RULE 1007-2(b)(1) and (2)**

52.     The Debtor has no current employees.

**LOCAL RULE 1007-2(b)(3)**

53.     The Debtors are not currently operating. As such there is no income and expenses anticipated over the next thirty (30) days.

## CONCLUSION

54.     The Debtors believe it is in the best interests of all of their creditors that it be afforded an opportunity to refinance and reorganize its obligations in Chapter 11.

55.     The needs and interests of the Debtors and their creditors will best be served by the Debtors' possession of their assets and management of their affairs as Debtors-in-Possession under Chapter 11 until confirmation of a reorganization plan.

56.     Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       April 3, 2015

                                */s/ Eli Bobker*
                                Eli Bobker

## SCHEDULE I

**<u>List of Debtors' 20 Largest Unsecured Creditors</u>**

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## Southern District of New York

In re   97-111 Hale, LLC                                                                                  Case No.   15-22381
Debtor(s)                                                                            Chapter   11

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or* chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian."  Do not disclose the child's name.  See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) *Name of creditor and complete mailing address including zip code* | (2) *Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3) *Nature of claim (trade debt, bank loan, government contract, etc.)* | (4) *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5) *Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| Warner & Scheuerman<br>6 Wesr 18th Street, 10th FL<br>New York, NY 10011 | Warner & Scheuerman<br>6 Wesr 18th Street, 10th FL<br>New York, NY 10011 | Legal Fees | Unliquidated | 50,000.00 |
| Marc Coupey, Esq.<br>441 Saw Mill River Road<br>Millwood, NY 10546 | Marc Coupey, Esq.<br>441 Saw Mill River Road<br>Millwood, NY 10546 | Legal Fees | Unliquidated | 25,000.00 |
| City of White Plains<br>Finance Department<br>255 Main Street, Rm 102<br>White Plains, NY 10601 | City of White Plains<br>Finance Department<br>255 Main Street, Rm 102<br>White Plains, NY 10601 | | | 0.00<br><br>(Unknown secured) |

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the Manager, Hale Club, LLC, Managing Member of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date   April  3, 2015                                       Signature   /s/ Eli Bobker
                                                                                          Eli Bobker
                                                                                          Manager, Hale Club, LLC, Managing Member

*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§  152 and 3571.

B4 (Official Form 4) (12/07)

## United States Bankruptcy Court
### Southern District of New York

In re: 100-114 Hale, LLC  
Debtor(s)

Case No. 15-22382  
Chapter 11

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or* chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian."  Do not disclose the child's name.  See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5) Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Warner & Scheuerman<br>6 Wesr 18th Street, 10th FL<br>New York, NY 10011 | Warner & Scheuerman<br>6 Wesr 18th Street, 10th FL<br>New York, NY 10011 | Legal Fees | | 50,000.00 |
| Marc Coupey, Esq.<br>441 Saw Mill River Road<br>Millwood, NY 10546 | Marc Coupey, Esq.<br>441 Saw Mill River Road<br>Millwood, NY 10546 | Legal Fees | | 25,000.00 |

### DECLARATION UNDER PENALTY OF PERJURY
### ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the Manager Hale Club, LLC, Managing Member of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date  April 3, 2015

Signature  /s/ Eli Bobker  
Eli Bobker  
Manager Hale Club, LLC, Managing Member

*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.  
18 U.S.C. §§ 152 and 3571.

## SCHEDULE II

**List of Debtors' 5 Largest Secured Creditors**

B6D (Official Form 6D) (12/07)

In re **97-111 Hale, LLC**,     Case No. **15-22381**
                             Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No.<br>**City of White Plains**<br>**Finance Department**<br>**255 Main Street, Rm 102**<br>**White Plains, NY 10601** | | - | **Real Estate Taxes**<br><br>Value $     **Unknown** | | | | 0.00 | **Unknown** |
| Account No.<br>**Grand Pacific Finance Corp.**<br>**c/o Herrick Feinstein**<br>**2 Park Avenue**<br>**New York, NY 10016** | | - | **Mortgage**<br><br>Value $     0.00 | | | X | 5,362,500.00 | 0.00 |
| Account No.<br>**Grand Pacific Finance Corp.**<br>**c/o Herrick Feinstein**<br>**2 Park Avenue**<br>**New York, NY 10016** | X | - | **Judgment Lien**<br><br>Value $     0.00 | | | X | 9,403,095.31 | 0.00 |
| Account No.<br>**Grand Pacific Finance Corp.**<br>**c/o Herrick Feinstein**<br>**2 Park Avenue**<br>**New York, NY 10016** | X | - | **Judgment Lien**<br><br>Value $     0.00 | | | X | 1,855,502.01 | 0.00 |
| **1** continuation sheets attached | | | | | | Subtotal<br>(Total of this page) | 16,621,097.32 | 0.00 |

**B6D (Official Form 6D) (12/07) - Cont.**

In re  **97-111 Hale, LLC**, Case No. **15-22381**
Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No.<br><br>MG McLaren P.C.<br>100 Snake Hill Road<br>West Nyack, NY 10994 | | - | **Judgment Lien**<br><br>Value $ 0.00 | | | | 26,662.86 | 0.00 |
| Account No. | | | Value $ | | | | | |
| Account No. | | | Value $ | | | | | |
| Account No. | | | Value $ | | | | | |
| Account No. | | | Value $ | | | | | |

Sheet **1** of **1** continuation sheets attached to
Schedule of Creditors Holding Secured Claims

Subtotal (Total of this page): **26,662.86**  **0.00**

Total (Report on Summary of Schedules): **16,647,760.18**  **0.00**

B6D (Official Form 6D) (12/07)

In re **100-114 Hale, LLC**  ,   Case No. **15-22382**
　　　　　　　　　　　Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No.<br><br>**City of White Plains**<br>**Finance Department**<br>**255 Main Street, Rm 102**<br>**White Plains, NY 10601** | | - | **Real Estate Taxes**<br><br><br>Value $　　　　　0.00 | | | | 0.00 | 0.00 |
| Account No.<br><br>**Grand Pacific Finance Corp.**<br>**c/o Herrick Feinstein**<br>**2 Park Avenue**<br>**New York, NY 10016** | X | - | **Mortgage**<br><br><br>Value $　　　　　0.00 | | | X | 5,362,500.00 | 0.00 |
| Account No.<br><br>**Grand Pacific Finance Corp.**<br>**c/o Herrick Feinstein**<br>**2 Park Avenue**<br>**New York, NY 10016** | X | - | **Judgment Lien**<br><br><br>Value $　　　　　0.00 | | | X | 9,403,095.31 | 0.00 |
| Account No.<br><br>**Grand Pacific Finance Corp.**<br>**c/o Herrick Feinstein**<br>**2 Park Avenue**<br>**New York, NY 10016** | | - | **Judgment Lien**<br><br><br>Value $　　　　　0.00 | | | X | 1,855,502.01 | 1,855,502.01 |
| **_1_** continuation sheets attached | | | | Subtotal (Total of this page) | | | 16,621,097.32 | 1,855,502.01 |

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com　　　　　　　　　　　　　　　　　　　　　　　　　　　　Best Case Bankruptcy

B6D (Official Form 6D) (12/07) - Cont.

In re **100-114 Hale, LLC**, Case No. **15-22382**
Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No.<br><br>MG McLaren P.C.<br>100 Snake Hill Road<br>West Nyack, NY 10994 | | - | **Judgment Lien**<br><br>Value $ 0.00 | | | | 26,662.86 | 0.00 |
| Account No. | | | Value $ | | | | | |
| Account No. | | | Value $ | | | | | |
| Account No. | | | Value $ | | | | | |
| Account No. | | | Value $ | | | | | |

Sheet **1** of **1** continuation sheets attached to
Schedule of Creditors Holding Secured Claims

Subtotal (Total of this page): **26,662.86** | **0.00**

Total (Report on Summary of Schedules): **16,647,760.18** | **1,855,502.01**

## Schedule III

## **Combined Balance Sheet for 97-111 Hale, LLC and 100-114 Hale, LLC**

**ASSETS**

Real Property

| | | |
|---|---|---|
| | 97-111 Hale Avenue | $4,500,000.00 |
| | 100-114 Hale Avenue | $5,500,000.00 |
| Personal Property | | $0 |
| **Total** | | **$10,000,000.00** |

**LIABILITIES**

Secured Claims

| | | |
|---|---|---|
| | Grand Pacific (Foreclosure Amount) | $5,362,500.00 |
| | Grand Pacific (Judgment Amount) | $13,710,123.36 |
| | MG McLaren PC` | $26,662.86 |
| Priority Claims | | $0 |
| Unsecured Claims | | $75,000.00 |
| **Total** | | **$19,174,286.22** |

14