Hearing Date & Time:  May 8, 2015 at 10:00 a.m.
Objection Deadline:  May 1, 2015 at 4:00 p.m.

HERRICK, FEINSTEIN LLP
*Attorneys for Grand Pacific Finance Corp.*
Stephen B. Selbst
Hanh V. Huynh
Two Park Avenue
New York, NY  10016
(212) 592-1400
(212) 592-1500
sselbst@herrick.com
hhuynh@herrick.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| 97-111 HALE, LLC, and 100-114 HALE, LLC, | : | Lead Case No.:  15-22381 (RDD) |
| | : | (Jointly Administered) |
| Debtors. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF MOTION OF GRAND PACIFIC FINANCE**
**CORP. FOR (I) DISMISSAL OF THE CHAPTER 11 CASES, OR**
**(II) IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY**

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") to consider the motion (the "Motion") of Grand Pacific Finance Corp. ("Grand Pacific"), seeking entry of an order, (i) pursuant to 11 U.S.C. § 1112(b), dismissing the above-captioned chapter 11 cases of 97-111 Hale, LLC and 100-114 Hale, LLC (collectively, the "Debtors"), or, (ii) in the alternative, vacating the automatic stay, pursuant to 11 U.S.C. § 362(d), shall be held before the Honorable Judge Robert D. Drain, Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of New York, at 300 Quarropas Street, White Plains, New York 10601 on **May 8, 2015 at 10:00 a.m.** (prevailing Eastern Time).

HF 9951856v.6

**PLEASE TAKE FURTHER NOTICE** that objections to the Motion, if any, must be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (General order M-242 and the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (with a hard-copy delivered directly to Chambers), and shall be served in accordance with General Order M-242 upon (a) counsel for Grand Pacific, Herrick, Feinstein LLP, 2 Park Avenue, New York, NY 10016 (Attn.: Stephen B. Selbst, Esq.); (b) the Office of the United States Trustee; and (c) all parties who have timely filed requests for notice under Rule 2002 of the Bankruptcy Rules, so as to be received no later than **May 1, 2015, at 4:00 p.m.** (prevailing Eastern Time).

Dated: New York, New York
April 17, 2015

        HERRICK, FEINSTEIN LLP
        *Attorneys for Grand Pacific Finance Corp.*

        By:    /s/ Stephen B. Selsbt
            Stephen B. Selbst
            Hanh V. Huynh
        Two Park Avenue
        New York, NY 10016
        (212) 592-1400
        (212) 592-1500
        sselbst@herrick.com
        hhuynh@herrick.com

Hearing Date & Time: **May 8, 2015 at 10:00 a.m.**
Objection Deadline: **May 1, 2015 at 4:00 p.m.**

HERRICK, FEINSTEIN LLP
*Attorneys for Grand Pacific Finance Corp.*
Stephen B. Selbst
Hanh V. Huynh
Two Park Avenue
New York, NY  10016
(212) 592-1400
(212) 592-1500
sselbst@herrick.com
hhuynh@herrick.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
In re:                                                  :   Chapter 11
                                                        :
97-111 HALE, LLC, and 100-114 HALE, LLC,    :   Lead Case No.:  15-22381 (RDD)
                                                        :   (Jointly Administered)
                  Debtors.                              :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MOTION OF GRAND PACIFIC FINANCE
CORP. FOR (I) DISMISSAL OF THE CHAPTER 11 CASES, OR
(II) IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY**

Grand Pacific Finance Corp. ("Grand Pacific"), by its counsel Herrick, Feinstein LLP, as and for its motion (the "Motion") seeking entry of an order, (i) pursuant to 11 U.S.C. § 1112(b), dismissing the above-captioned chapter 11 cases (the "Chapter 11 Cases") of 97-111 Hale, LLC and 100-114 Hale, LLC (collectively, the "Debtors"), or, (ii) in the alternative, vacating the automatic stay, pursuant to 11 U.S.C. § 362(d), respectfully represents as follows:

**INTRODUCTION**

1. The Chapter 11 Cases have all the indicia of bad faith filings and do not belong in bankruptcy.  Each of the cases is a two party dispute that has been in litigation for more than six years and was finally set for a foreclosure trial on April 27, 2015.  The filing of the Debtors'

petitions is yet another of the many litigation tactics the Debtors and the Bobkers have employed through the years to delay and frustrate Grand Pacific's legitimate exercise of its remedies.

2. In a stunning and stark admission of their bad faith, Declaration of Eli Bobker Pursuant to Local Bankruptcy Rule 1007-2 (the "Rule 1007 Declaration") [Docket No. 12] filed by Eli Bobker, one of the Debtors' principals, clearly lays out the Debtors' intention to use the Chapter 11 Cases for the improper purpose of re-litigating claims against Grand Pacific that have already been decided against them. This Court should not countenance such a flagrant abuse of the judicial process.

3. But even apart from their wrongful litigation strategy, these Chapter 11 Cases arrive stillborn, with no possibility of being revived. The Debtors' sole assets, the land located at 97-111 Hale Avenue and 100-114 Hale Avenue, White Plains, New York (collectively, the "Properties"), sit as vacant lots; the site approvals for the development of the lots have long since lapsed. Following the depletion of the initial one-year interest reserve, the Debtors have never made interest payments on the debt owed to Grand Pacific, and they have never paid real estate taxes on the Properties, forcing Grand Pacific to make protective advances to pay the taxes and protect its loans.

4. The Debtors have no significant creditors in number or amount. According to the Debtors' schedules, there are only three unsecured creditors: two law firms and a slip and fall personal injury claimant. Other than an engineering contractor with a small judgment lien, Grand Pacific is the only secured creditor, scheduled as holding disputed claims for a mortgage in the amount of $5,362,500 and two judgment liens totaling over $11.2 million. There are no employees and no executory contracts or leases. In short, there is no business to reorganize. The

Debtors' bankruptcy cases serve no legitimate purpose, and were filed in bad faith shortly before the foreclosure trial was scheduled in order to delay the foreclosure proceedings.

5. The Properties are vacant, and cannot and do not generate any income to service the secured debt or pay any expenses. The most recent appraisal (the "Appraisal") of the Properties prepared on May 20, 2013 by CBRE, Inc. ("CBRE") concludes that the fair market value of the Properties is $7 million, with a liquidation value between $3.5 and $5.25 million.[1] A copy of the Appraisal is annexed hereto as Exhibit A[2]. Grand Pacific's aggregate secured claim of more than $16.5 million is substantially greater than the highest valuation of the Properties. Thus, there is no equity in the Properties, and because the Properties generate no cash flow, there are no funds available to service Grand Pacific's debt. Moreover, Grand Pacific's deficiency claim of more than $9 million dwarfs the general unsecured class of claimants. Grand Pacific therefore controls both the secured and unsecured claims pools, and without Grand Pacific's consent (which it will not give), the Debtors cannot confirm a plan.

6. Against this backdrop, there is no possibility that the Debtors can propose a confirmable plan of reorganization around the Properties. Accordingly, the Properties are not necessary to an effective reorganization. Thus, in the event the Court declines to dismiss the Debtors' cases, modification of the automatic stay is warranted to enable Grand Pacific to proceed with its pending foreclosure action against the Debtors.

7. Contemporaneously herewith, Grand Pacific has filed a separate motion seeking sanctions against the Debtors, their principals, and their attorneys for the conduct described herein and in the sanctions motion.

---

[1] The Debtors have scheduled the Properties with an aggregate value of $10 million. Even according to the Debtors' own estimated value, Grand Pacific's secured claim is far in excess of the value of the Properties.

[2] Grand Pacific has requested an updated appraisal, but does not believe that the updated value conclusions will be materially different than as currently set forth in the Appraisal.

**BACKGROUND**

<u>The Properties and the Grand Pacific Debt</u>

8. The Debtors are single asset real estate entities whose sole assets are the Properties. The equity interests in the Debtors are owned by the Bobker Family Trust (40% Class A membership interest), Hale Club, LLC ("<u>Hale Club</u>") (40% Class A membership interest, and managing member), United Asian Fund LLC ("<u>United Asian</u>"), as nominee for Global One Corp. ("<u>Global One</u>") and 366 Madison, Inc. ("<u>366 Madison</u>") (10% Class B membership interest), and United Asian in its own right (10% Class B membership interest).

9. The Debtors' principals are real estate developers Joe Bobker and his sons Eli and Ben Bobker. In 2004, the Debtors purchased the Properties. On July 22, 2005, Sterling Real Estate Holding Company, Inc. ("<u>Sterling</u>") loaned $5.5 million to the Debtors (the "<u>Sterling Loan</u>"), secured by a mortgage on the Properties and guaranteed by Eli and Ben.

10. On August 16, 2006, Grand Pacific loaned $5,362,500 to the Debtors (the "<u>Grand Pacific Loan</u>"), secured by a mortgage[3] on the Properties and guaranteed by Joe. Joe also guaranteed a separate loan from Grand Pacific to Hale Club in the amount of $1,637,500 (the "<u>Mezzanine Loan</u>"). The note for the $1,637,500 loan provides that Grand Pacific may sell participation interests thereunder.

11. On or about October 24, 2006, Sterling loaned another $1 million to the Debtors, secured by another mortgage on the Properties and guaranteed by Eli and Ben.

12. The Grand Pacific Loan matured on August 16, 2007, and the Debtors and guarantors defaulted on the underlying note, mortgage and guaranty by failing to pay the loan.

---

[3] Specifically, to evidence the indebtedness under the Grand Pacific Loan, Grand Pacific took an assignment of an existing $300,000 note and the Debtors executed a $5,062,500 note in favor of Grand Pacific. The two notes were then consolidated under an amended note. To secure payment of the amended note, Grand Pacific took an assignment of an existing $300,000 mortgage and the Debtors delivered a mortgage of the Properties to Grand Pacific.

4

13.     On December 28, 2007, following the Debtors' default on the Mezzanine Loan, 366 Madison purchased a junior participation interest in Grand Pacific's rights under the Mezzanine Loan. The New York State Court has conclusively determined that the foregoing transaction was a purchase of a participation interest. *See* Jaffe Decision at 6-7.

14.     On January 15, 2008, "to protect its interest in the [Properties], Grand Pacific purchased both of the Sterling loans." Jaffe Decision at 3.

The Collection Action

15.     On April 16, 2009, Grand Pacific commenced an action to collect on certain defaulted notes and guaranties (the "Collection Action") pending under index number 601164/2009 in the Supreme Court of the State of New York, New York County (the "New York State Court") against the Debtors and the Bobkers to collect sums due under the $5.5 million Sterling loan, the Mezzanine Loan, the $1 million Sterling loan, and the related guaranties.

16.     The defendants filed an answer and thereafter an amended answer in which the Debtors and other defendants in the Collection Action raised thirteen affirmative defenses, seven counterclaims and eight crossclaims.

17.     By decision and order dated June 7, 2010, the New York State Court granted summary judgment (the "Summary Judgment Decision") in favor of Grand Pacific in the Collection Action, appointed a referee to compute the amounts due, and severed the counterclaims and crossclaims for separate disposition. A copy of the Summary Judgment Decision is annexed hereto as Exhibit B. On December 20, 2011, the Appellate Division, First Department, affirmed the Summary Judgment Decision in all respects. A copy of the First Department decision is annexed hereto as Exhibit C.

18. On or about March 15, 2011, the New York State Court confirmed a special referee's findings as to the amounts due under the three loans at issue in the Collection Action, and on or about May 20, 2011, judgment in the amount of $13,710,123.36 was entered in favor of Grand Pacific. Grand Pacific has been attempting to collect on the judgment since that time. A copy of the judgment in the Collection Action is annexed hereto as Exhibit D.

19. On September 29, 2012, the New York State Court entered a decision and order denying the defendants' request in the Collection Action to file a second amended answer and counterclaims that, notably, is virtually identical to the second amended answer and counterclaims the defendants filed in the Foreclosure Action discussed below. In so ruling, the New York State Court stated that if it were "to review the merits of defendants' motion for leave to amend their answer, the court would find that at least a portion of the proposed second amended verified answer is '*palpably insufficient to state a cause of action [and] patently devoid of merit*.'" *See* September 29, 2012 Decision and Order at 16 (emphasis added), annexed hereto as Exhibit E.

20. On November 6, 2013, in a separate proceeding related to the Collection Action commenced by Joe Bobker against, among others, attorneys at Herrick, Feinstein LLP, the New York State Court (Judge Jaffe) granted defendants summary judgment and dismissed plaintiff's complaint. Judge Jaffe's decision (the "Jaffe Decision") is annexed hereto as Exhibit F.

The Foreclosure Action

21. On April 17, 2009, Grand Pacific commenced an action (the "Foreclosure Action") pending under index number 008084/2009 in the Supreme Court of the State of New York, Westchester County (the "Westchester State Court") by filing a complaint to foreclose on

6

the mortgage securing the Grand Pacific Loan and for entry of judgment against Joe Bobker on his guaranty.

22. On July 17, 2009, the defendants answered and admitted executing and delivering the note and mortgage under the Grand Pacific Loan and failing to pay the amounts due thereunder. On August 6, 2009, the defendants served an amended answer, in which they asserted the same thirteen affirmative defenses, seven counterclaims and eight crossclaims stated in the Collection Action.

23. On July 22, 2010, Grand Pacific filed a motion for summary judgment prior to discovery. The Westchester State Court held that Grand Pacific has made out a *prima facie* case for foreclosure, although it also held that the defendants had raised issues of fact with respect to their default on the Grand Pacific Loan.

24. On April 19, 2011, the Westchester State Court permitted the Debtors and the other defendants to serve a second amended answer.

25. Following two years of discovery, Grand Pacific again moved for summary judgment based on the defendants' amended pleadings and the evidence adduced in discovery. In a ruling dated March 28, 2013, the Westchester State Court made the following rulings with respect to Grand Pacific:

- Denying Grand Pacific summary judgment of foreclosure;

- Denying summary judgment on defendants' first, second and fifth counterclaims/crossclaims;

- Granting summary judgment dismissing fourth counterclaim/crossclaim (Joe Bobker's guaranty is enforceable, and Grand Pacific is entitled to judgment on that claim);

- Granting summary judgment dismissing third counterclaim/crossclaim (conversion); and

7

- Granting summary judgment striking defendants' first, second, third, fifth, sixth, tenth, eleventh, and twelfth affirmative defenses.

A copy of the March 28, 2013 Westchester State Court decision is annexed hereto as <u>Exhibit G</u>.

26.     Grand Pacific appealed the post-discovery summary judgment decision. On appeal, on December 10, 2014, the Appellate Division, Second Department, ordered the modification of the Westchester State Court order to provide, with respect to Grand Pacific: (i) summary judgment to Grand Pacific striking the fourth, seventh, eighth, and ninth affirmative defenses (resulting in all affirmative defenses being stricken); and (ii) summary judgment to Grand Pacific dismissing the defendants' first and second counterclaims (resulting in the dismissal of all counterclaims other than the equitable elements of the fifth counterclaim). The Appellate Division affirmed the Westchester State Court's denial of summary judgment on the complaint for foreclosure. A copy of the Second Department's decision on appeal is annexed hereto as <u>Exhibit H</u>.

27.     The Westchester State Court scheduled a trial date of April 27, 2015 for the Foreclosure Action.

<u>The Chapter 11 Cases</u>

28.     On March 25, 2015 (the "<u>Petition Date</u>"), less than a month before the scheduled trial of the Foreclosure Action, the Debtors filed the Chapter 11 Cases.[4] Each of the Debtors' voluntary petitions is signed by Eli Bobker, as the manager of the managing member of the Debtors, and by Jonathan Pasternak, Esq. on behalf of DelBello Donnellan Weingarten Wise &

---

[4] Not coincidentally, the Petition Date is also one day prior to a referee's hearing in the New York State Court regarding Grand Pacific's motion to seek an installment payment order against only the Bobkers. By letter dated March 25, 2015 from Mr. Pasternak to counsel for Grand Pacific, counsel was advised that the referee's hearing was stayed by the Debtors' bankruptcy filings, which Grand Pacific disputed. At the hearing the following day, the state court referee determined that the stay did not apply to the non-debtor Bobker defendants and conducted the hearing on Grand Pacific's request for an installment payment order.

Wiederkehr, LLP, the Debtors' bankruptcy counsel. The Chapter 11 Cases are jointly administered pursuant to an order entered by the Court on April 15, 2015.

29. On April 7, 2015, the Debtors filed a notice of removal of the Foreclosure Action.

30. The removal of the Foreclosure Action is consistent with the Debtors' stated intentions as set forth in the Rule 1007 Declaration. Much of the rest of the Rule 1007 Declaration, however, is a recitation of the Debtors' version of facts that were argued and rejected in the state court actions.

31. For example, the Rule 1007 Declaration states that "[u]pon information and belief, and undisclosed to the Debtors and guarantors at the time of closing, Global One, 366 Madison and United Asian were shell companies owned and/or controlled by the owners and/or the senior management at Grand Pacific." Rule 1007 Declaration ¶ 17. This misrepresentation contravenes the findings of the Second Department, which held that "[t]he submissions in support of the motions also demonstrated that, contrary to the Bobker respondents' allegation, Grand Pacific did not fail to disclose its relationship with Global One and 366 Madison." Second Department decision at 4.

32. Eli Bobker then states that "[u]pon information and belief, 366 Madison breached the terms of the Operating Agreements on December 28, 2007 by purchasing the $1,637,500 mezzanine loan outright from Grand Pacific and acquiring a $362,500 interest from Grand Pacific in its $5,362,500 second property mortgage," and that "Grand Pacific was aware of the terms of the Operating Agreements and that such transfer violated the terms thereof. The parties 'papered' the sale to look like a participation." Rule 1007 Declaration ¶¶ 20, 21. Eli Bobker's sworn testimony is again refuted by judicial determination: The New York State Court held that neither Grand Pacific nor 366 Madison signed the Operating Agreements and thus cannot be held

9

liable for breaching them. *See* Jaffe Decision at 10. Moreover, the New York State Court has determined that 366 Madison did not purchase the mezzanine loan from Grand Pacific, but rather purchased a participation interest in the Mezzanine Loan. Jaffe Decision 6-7.

33. Mr. Bobker repeats this knowingly false claim at paragraph 26 of the Rule 1007 Declaration: "As specified above, 366 Madison had secretly acquired the Grand Pacific Mezzanine Loan, and a $365,500 portion of the Grand Pacific First Mortgage. In addition, Grand Pacific (via 366 Madison) acquired the Sterling Loans. Each of these transactions, *inter alia*, expressly breached the Operating Agreements." This falsehood is again inconsistent with adjudicated facts. *See* Jaffe Decision 6-7, 10.

## ARGUMENT

### I. THE DEBTORS' BANKRUPTCY CASES SHOULD BE DISMISSED AS BAD FAITH FILINGS

34. Section 1112 of the Bankruptcy Code provides that a chapter 11 case may be dismissed "for cause." Subsection (b)(1) thereof provides as follows:

> (b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

35. It is well-settled that "cause" for dismissal purposes includes a filing made in bad faith. *In re C-TC 9th Avenue Partnership v. Norton Movant (In re C-TC 9th Ave P'ship)*, 113 F.3d 1304, 1310 (2d Cir. 1997); *see also Baker v. Latham Sparrowbush Assoc. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 227-28 (2d Cir. 1991); *In re SGL Carbon Corp.*, 200 F.3d

10

154, 160-61 (3d Cir. 1999) (compiling cases); *In re Schur Management*, 323 B.R. 123, 126 (Bankr. S.D.N.Y. 2005).

36. The Second Circuit Court of Appeals has found the following eight factors to be indicative of a bad faith filing giving rise to "cause" for dismissal:

   a. The debtor has only one asset;

   b. The debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

   c. The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

   d. The debtor's financial condition is, in essence, a two-party dispute between the debtor and secured creditors which can be resolved in a pending state court action;

   e. The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

   f. The debtor has little or no cash flow;

   g. The debtor cannot meet current expenses including the payment of personal property and real estate taxes; and

   h. The debtor has no employees.

*See In re C-TC 9th Ave. Partnership*, 113 F.3d at 1311; *see also, In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394-95 (11h Cir. 1988); *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309 (Bankr. S.D.N.Y. 2001); *234-6 West 22nd St. Corp.*, 214 B.R. 751, 760 (Bankr. S.D.N.Y. 1997).

37. The Chapter 11 Cases must be dismissed because ***every single C-TC*** bad faith factor is present. Specifically, (1) the cases are admittedly single asset real estate cases; (2) there are three unsecured creditors with *de minimus* claims, including two law firms employed by the Debtors pre-petition; (3) the Debtors' sole assets, the Properties, are the subject of the Foreclosure Action as a result of the Debtors' defaults; (4) each of the Chapter 11 Cases is a two-

11

party dispute between the Debtors and Grand Pacific which can and should be resolved in the Foreclosure Action; (5) the filing was commenced mere weeks before the scheduled trial on the Foreclosure Action, which has been pending for *six years*, evidencing the Debtors' intent to delay and frustrate Grand Pacific's legitimate efforts to enforce its rights under the Grand Pacific Loan note and mortgage; (6) the Debtors generate no cash flow, their sole assets lying idle; (7) the Debtors cannot meet their current expenses including the payment of taxes and insurance on the Properties; and (8) the Debtors have no employees. Because every single *C-TC* factor is present, Grand Pacific respectfully submits that the Chapter 11 Cases must be dismissed pursuant to section 1112 of the Bankruptcy Code as bad faith filings.

## II.   IN THE ALTERNATIVE, THE MOVANT IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1) and (d)(2)

38.   If the Court declines to dismiss the Chapter 11 Cases, Grand Pacific is entitled, in the alternative, to relief from the automatic stay to allow it to proceed with the Foreclosure Action. Section 362(d) of the Bankruptcy Code governs the automatic stay and the modification thereof. The section provides, in pertinent part:

> (d)   On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay --
>
> (1)   for cause, including the lack of adequate protection of an interest in property of such party in interest.
>
> (2)   with respect to a stay of an act against property under subsection (a) of this section, if -
>
> (A)   the debtor does not have any equity in such property; and
>
> (B)   such property is not necessary to an effective reorganization …

11 U.S.C. § 362(d)(1), (2).

39. "Sections 362(d)(1) and (d)(2) are disjunctive. This means that the Court must lift the stay if the movant prevails under either of the two grounds." *In re Elmira Litho Inc.*, 174 B.R. 892, 900 (Bankr. S.D.N.Y. 1994) (citing *In re Touloumis*, 170 B.R. 825, 827 (Bankr. S.D.N.Y. 1994); *In re de Kleinman*, 156 B.R. 131, 136 (Bankr. S.D.N.Y. 1993); and *In re Diplomat Elecs. Corp.*, 82 B.R. 688, 692 (Bankr. S.D.N.Y. 1988)). Here, Grand Pacific respectfully submits that it is entitled to modification of the automatic stay for cause under both sections 362(d)(1) and (2).

A. **"Cause" Exists for Relief From Stay Pursuant to 11 U.S.C. § 362(d)(1)**

40. In a hearing for relief from the automatic stay under section 362(d), the party opposing stay relief bears the burden of proof on all issues (except the debtor's equity in the property under section 362(d)(2)(A)). *See In re Domestic Fuel Corp.*, 70 B.R. 455, 462-63 (Bankr. S.D.N.Y. 1987); 11 U.S.C. § 362(g). If a creditor seeking relief from the automatic stay makes a *prima facie* case of cause for lifting the stay, the burden of going forward shifts to the debtor pursuant to section 362(g). *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 756 (Bankr. S.D.N.Y. 1997). *See also Elmira Litho*, 174 B.R. at 901.

41. The term "cause" is not defined in the Bankruptcy Code, and whether cause to lift the stay exists should be determined on a case-by-case basis. *See Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990); *In re Balco Ltd.*, 312 B.R. 734, 748 (Bankr. S.D.N.Y. 2004). The decision whether to lift the automatic stay is committed to the sound discretion of the bankruptcy judge and may be overturned only upon a showing of abuse of discretion. *See Sonnax*, 907 F2d at 1286.

42. Here, the Debtors' bad faith in filing the Chapter 11 Cases constitutes cause to lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1). *See In re Kornhauser*, 184 B.R. 425, 428

13

(Bankr. S.D.N.Y. 1995); *Manhattan King David Restaurant, Inc. v. Levine*, 163 B.R. 36, 40 (S.D.N.Y. 1993). As more fully set forth above, it is clear that the Debtors' petitions were filed in bad faith without a valid reorganization purpose and, accordingly, cause exists to vacate the automatic stay as it pertains to Grand Pacific.

43. In *In re Kaplan Breslaw Ash, LLC*, Judge Gerber considered a similar set of circumstances and found the debtor's bad faith filing to constitute cause for stay relief. In so doing, the court noted:

> Here, under the totality of the circumstances, the Court finds this case to be indistinguishable in relevant respects from *234-6 West 22nd St.*, and applying criteria in that case and *C-TC TC 9th Ave. Partnership*, the Court concludes that this case should be dismissed for substantially the same reasons. Here the Debtor has only one asset, the Warehouse. It has no employees. It produces no income, and has no discernible cash flow. It has very few unsecured creditors (especially non-insiders), and none, so far as the Court can determine, that would be helped by a chapter 11 reorganization. (Indeed, the two largest unsecured claims-though recognizing the likelihood that they will overlap - are those of the Mortgageholder and Sterling, affiliates of each other who support relief from the stay.) The Warehouse is the subject of a foreclosure action as the result of arrearages on the Mortgageholder's secured debts. The case is essentially a two-party dispute between the Mortgageholder and the Debtor, and the timing of the Debtor's entry into bankruptcy (initially in New Jersey) has caused the Court to find as a fact that the Debtor timed its bankruptcy filing so that it could avail itself of the automatic stay in order to stop the foreclosure action.

*In re Kaplan Breslaw Ash, LLC*, 264 B.R. at 335.

44. In addition, Grand Pacific's lack of adequate protection also constitutes cause warranting relief from the automatic stay. Lack of adequate protection is specifically defined as cause under section 362(d)(1). Although adequate protection is specifically defined in the Bankruptcy Code, section 361 lists three separate ways adequate protection may be provided to a creditor:

14

      i.    cash payments or periodic cash payments;

      ii.    replacement lien; or

      iii.    granting such other relief, as will result in the realization of the indubitable equivalent of the creditor's interest in such property.

11 U.S.C. § 361.

45.    One bankruptcy court recently explained:

> The purpose of providing adequate protection is to insure that a creditor receives the value for which it bargained pre-bankruptcy. Adequate protection is, essentially, protection for the creditor to assure its collateral is not depreciating or diminishing in value … and is made on a case-by-case basis. The secured creditor "must, therefore, prove this decline in value-or the threat of a decline-in order to establish a prima facia case.

*In re Gunnison*, 320 B.R. 391, 396 (Bankr. D. Col. 2005) (internal citations omitted).

46.    The Supreme Court has stated that an "interest is not adequately protected if the security is depreciating during the term of the stay." *United Sav. Ass'n v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365, 370 (1988).

47.    In this case, no adequate protection has been offered by the Debtors because the Properties generate no cash flow. In the meantime, the Properties are subject to diminution in value because the Debtors have no income, cash flow, or unencumbered funds to pay the necessary expenses (including real estate taxes) of the Properties. Indeed, as noted above, Grand Pacific has to pay real estate taxes properly payable by the Debtors, increasing Grand Pacific's exposure to the Debtors. Courts regularly grant relief from the automatic stay where the movant has demonstrated a post-petition diminution in the value of the collateral. *See e.g., LNC Invs., Inc. v. First Fidelity Bank*, 1995 WL 231322 at * 4 (S.D.N.Y. Apr. 19, 1995) (noting that methods of determining lack of adequate protection under section 362(d)(1) "emphasize actual or likely diminution in the value of the collateral in the period between the petition and the plan");

*In re 160 Bleecker St. Assocs.*, 156 B.R. 405, 413 (S.D.N.Y. 1993) (reversing ruling of bankruptcy court and vacating stay because value of collateral had declined by $600,000 (from an appraised value of $1.6 million) over course of one and a half years); *In re Domestic Fuel Corp.*, 70 B.R. 455, 463 (Bankr. S.D.N.Y. 1987) (granting relief from the automatic stay under section 362(d)(1) where movant demonstrated decline in value of stock pledged by debtor and debtor failed to establish movant was adequately protected); *In re Armenakis*, 406 B.R. 589, 620-21 (Bankr. S.D.N.Y. 2009) (granting creditor's motion for relief from stay upon the finding that secured creditor had proven decline or threat of decline in value of collateral and debtor had not offered any proof that creditor was adequately protected); *In re Grant Assocs.*, 1991 WL 21228 at *7 (S.D.N.Y. Feb. 5, 1991) (affirming bankruptcy court order terminating stay under section 362(d)(1) on the grounds that building securing creditor's claim was declining in value and debtor was unable to provide adequate protection).

48.     "Once the movant satisfies this initial burden, the burden shifts to the debtor to go forward with evidence, and ultimately, to prove that the collateral is not declining in value, or that the secured party is adequately protected through periodic payments, an equity cushion, additional or replacement liens or good prospects for a successful reorganization." *Elmira Litho*, 174 B.R. at 902 (citations omitted).

49.     The Debtors cannot satisfy their burden to show that the Properties are not declining in value, particularly because the site approvals for the development of the Properties have lapsed.  Nor can it credibly argue that Grand Pacific is adequately protected.  Accordingly, Grand Pacific should be granted relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code for "cause."

16

**B.  Relief From Stay is Appropriate Under
11 U.S.C. § 362(d)(2) Because There is No Equity In the
Properties and the Properties Are Not Necessary for an Effective Reorganization**

50.     Grand Pacific is entitled to relief from the automatic stay pursuant to section 362(d)(2) of the Bankruptcy Code because there is no equity in the Properties and the Properties are not necessary for an effective reorganization.

51.     As reflected in the Appraisal, the value of the Properties as of May 2013 was at most $7 million on a fair market valuation. The Debtors' indebtedness to Grand Pacific, according to their own schedules, is over $16.5 million. Accordingly, no equity exists in the Properties.

52.     Lack of equity is not necessarily fatal under section 362(d)(2) if a debtor can prove that the property is necessary to an effective reorganization. *In re Steffens*, 275 B.R. 570, 578 (Bankr. D. Colo. 2002). But to succeed in that regard, a debtor must show that there is a reasonable prospect of a successful organization within a reasonable period of time. *United Sav. Ass'n v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365, 375-76 (1988). If the debtor is unable to make such a showing, the court must grant relief from the stay. See 11 U.S.C. § 362(d). Here, it is clear that the Debtors are unable to establish that the Properties are necessary for an effective reorganization because they cannot propose a confirmable plan within a reasonable period of time.

53.     Based upon the Appraisal and the Grand Pacific debt, Grand Pacific is undersecured by over $9.5 million.[5] With a $9.5 million deficiency claim, Grand Pacific is by far the largest general unsecured creditor with more than two-thirds in amount of the unsecured

---

[5] Moreover, the $13.7 million judgment lien based on the judgment in the Collection Action is alone sufficient to give Grand Pacific an over $3 million deficiency claim even if the Debtors were to ignore the $5.3 million mortgage and also use the Debtors' $10 million valuation on the Properties. In other words, there is no possibility of equity in the Properties under any circumstances.

17

creditor pool. Therefore, the deficiency portion of Grand Pacific's claim is more than sufficient to control the general unsecured class in the Debtors' Chapter 11 Cases. Accordingly, the Debtors will not be able to obtain the consent of a non-insider class of impaired claims, as required by section 1129(a)(10) of the Bankruptcy Code and, therefore, cannot confirm a plan.

## CONCLUSION

For all the reasons set forth herein, Grand Pacific respectfully requests that the Court enter an order (i) dismissing the Debtors' Chapter 11 Cases or, (ii) in the alternative, modifying the automatic stay to enable Grand Pacific to proceed with the Foreclosure Action, and grant Grand Pacific such other and further relief as may be just and proper.

Dated: New York, New York
April 17, 2015

                                        HERRICK, FEINSTEIN LLP
                                        *Attorneys for Grand Pacific Finance Corp.*

                                        By:   */s/ Stephen B. Selsbt*
                                              Stephen B. Selbst
                                              Hanh V. Huynh
                                        Two Park Avenue
                                        New York, NY  10016
                                        (212) 592-1400
                                        (212) 592-1500
                                        sselbst@herrick.com
                                        hhuynh@herrick.com