**Hearing Date & Time:  May 8, 2015 at 10:00 a.m.**
**Objection Deadline:  May 1, 2015 at 4:00 p.m.**

HERRICK, FEINSTEIN LLP
*Attorneys for Grand Pacific Finance Corp.*
Stephen B. Selbst
Hanh V. Huynh
Two Park Avenue
New York, NY  10016
(212) 592-1400
(212) 592-1500
sselbst@herrick.com
hhuynh@herrick.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
In re:                                                  :    Chapter 11
                                                        :
97-111 HALE, LLC, and 100-114 HALE, LLC,                :    Lead Case No.:  15-22381 (RDD)
                                                        :    (Jointly Administered)
                        Debtors.                        :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### NOTICE OF MOTION OF GRAND PACIFIC
### FINANCE CORP. FOR SANCTIONS PURSUANT TO
### 11 U.S.C. § 105(a), 28 U.S.C § 1927, AND/OR BANKRUPTCY RULE 9011

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") to consider the motion

(the "Motion") of Grand Pacific Finance Corp. ("Grand Pacific"), seeking entry of an order,

pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), 28

U.S.C. § 1927, and/or Rule 9011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), imposing sanctions on the Debtors, Eli Bobker, and Debtors' counsel and awarding

Grand Pacific its costs and expenses, including attorneys' fees, incurred in connection with the

above-captioned chapter 11 cases of 97-111 Hale, LLC and 100-114 Hale, LLC (collectively, the

"Debtors"), shall be held before the Honorable Judge Robert D. Drain, Bankruptcy Judge of the

United States Bankruptcy Court for the Southern District of New York, at 300 Quarropas Street, White Plains, New York 10601 on **May 8, 2015 at 10:00 a.m.** (prevailing Eastern Time).

    **PLEASE TAKE FURTHER NOTICE** that objections to the Motion, if any, must be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (General order M-242 and the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (with a hard-copy delivered directly to Chambers), and shall be served in accordance with General Order M-242 upon (a) counsel for Grand Pacific, Herrick, Feinstein LLP, 2 Park Avenue, New York, NY  10016 (Attn.: Stephen B. Selbst, Esq.); (b) the Office of the United States Trustee; and (c) all parties who have timely filed requests for notice under Rule 2002 of the Bankruptcy Rules, so as to be received no later than **May 1, 2015, at 4:00 p.m.** (prevailing Eastern Time).

Dated: New York, New York
   April 17, 2015

         HERRICK, FEINSTEIN LLP
         *Attorneys for Grand Pacific Finance Corp.*

         By:  */s/ Stephen B. Selsbt*
          Stephen B. Selbst
          Hanh V. Huynh
         Two Park Avenue
         New York, NY  10016
         (212) 592-1400
         (212) 592-1500
         sselbst@herrick.com
         hhuynh@herrick.com

**Hearing Date & Time: May 8, 2015 at 10:00 a.m.**
**Objection Deadline: May 1, 2015 at 4:00 p.m.**

HERRICK, FEINSTEIN LLP
*Attorneys for Grand Pacific Finance Corp.*
Stephen B. Selbst
Hanh V. Huynh
Two Park Avenue
New York, NY  10016
(212) 592-1400
(212) 592-1500
sselbst@herrick.com
hhuynh@herrick.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
In re:                                    :    Chapter 11
                                          :
97-111 HALE, LLC, and 100-114 HALE, LLC,  :    Lead Case No.:  15-22381 (RDD)
                                          :    (Jointly Administered)
                        Debtors.          :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MOTION OF GRAND PACIFIC FINANCE CORP. FOR SANCTIONS PURSUANT**
**TO 11 U.S.C. § 105(a), 28 U.S.C § 1927, AND/OR BANKRUPTCY RULE 9011**

          Grand Pacific Finance Corp. ("Grand Pacific"), by its counsel Herrick, Feinstein

LLP, as and for its motion (the "Motion") seeking entry of an order, pursuant to section 105(a) of

title 11 of the United States Code (the "Bankruptcy Code"), 28 U.S.C. § 1927, and/or Rule 9011

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), imposing sanctions on

the Debtors, Eli Bobker, and Debtors' counsel and awarding Grand Pacific its costs and

expenses, including attorneys' fees, incurred in connection with the above-captioned chapter 11

cases (the "Chapter 11 Cases") of 97-111 Hale, LLC and 100-114 Hale, LLC (collectively, the

"Debtors"), respectfully represents as follows:

## <u>INTRODUCTION</u>

1.      As set forth in detail in Grand Pacific's motion to dismiss or, in the alternative for relief from the automatic stay, filed contemporaneously herewith (the "<u>Motion to Dismiss</u>"), the Chapter 11 Cases have all the indicia of bad faith filings and should be dismissed for the reasons stated therein.  The Chapter 11 Cases were filed in a blatant attempt to re-litigate issues already decided against the Debtors and the Bobkers, and to delay the pending foreclosure action against the Properties, which has been in litigation for over six years, with a foreclosure trial scheduled for April 27, 2015.

2.      While these types of last gasp bankruptcy filings have been used to delay foreclosure actions, the filing of the Chapter 11 Cases here are particularly egregious because of the sanctionable conduct of the Debtors, their principals and their attorneys.  In this case, the Debtors are abusing the bankruptcy process to re-litigate claims that have already been adjudicated against them in the state courts.

3.      Moreover, the Declaration of Eli Bobker Pursuant to Local Bankruptcy Rule 1007-2 (the "<u>Rule 1007 Declaration</u>") [Docket No. 12] filed by the Debtors' principal, Eli Bobker, is rife with numerous intentionally misleading statements that Mr. Bobker and Debtors' counsel know to be false, as discussed below.  The fact that Mr. Bobker is a licensed attorney currently registered in the State of New York makes this conduct all the more egregious. Furthermore, a reasonable investigation (indeed, even the most cursory investigation that included a review of state court decisions already rendered in the underlying actions) by the Debtors' bankruptcy counsel would have revealed that the assertions in the Rule 1007 Declaration are misleading and/or false, and that the Chapter 11 Cases were filed for the improper purpose of delaying the foreclosure action and re-litigating claims.

2

4.      Despite the knowledge that nearly all of the factual disputes and legal issues between the parties have been decided and that discovery has been completed, that all of the Debtors' affirmative defenses and counterclaims against Grand Pacific have been stricken or dismissed (other than the equitable aspects of the Debtors' fifth counterclaim, as discussed below), and that all of the relevant legal issues have been adjudicated in the state court proceedings, the Debtors nevertheless intend to abuse the bankruptcy process and re-litigate the same factual disputes and legal issues underlying the purported claims that the Debtors intend to resurrect in the Chapter 11 Cases.  These actions are sanctionable, and this Court has imposed sanctions in similar situations.

## BACKGROUND

The Properties and the Grand Pacific Debt

5.      The Debtors are single asset real estate entities whose sole assets are the Properties.  The equity interests in the Debtors are owned by the Bobker Family Trust (40% Class A membership interest), Hale Club, LLC ("Hale Club") (40% Class A membership interest, and managing member), United Asian Fund LLC ("United Asian"), as nominee for Global One Corp. ("Global One") and 366 Madison, Inc. ("366 Madison") (10% Class B membership interest), and United Asian in its own right (10% Class B membership interest).

6.      The Debtors' principals are real estate developers Joe Bobker and his sons Eli and Ben Bobker.  In 2004, the Debtors purchased the Properties.  On July 22, 2005, Sterling Real Estate Holding Company, Inc. ("Sterling") loaned $5.5 million to the Debtors (the "Sterling Loan"), secured by a mortgage on the Properties and guaranteed by Eli and Ben.

3

7.      On August 16, 2006, Grand Pacific loaned $5,362,500 to the Debtors (the "Grand Pacific Loan"), secured by a mortgage[1] on the Properties and guaranteed by Joe.  Joe also guaranteed a separate loan from Grand Pacific to Hale Club in the amount of $1,637,500 (the "Mezzanine Loan").  The note for the $1,637,500 loan provides that Grand Pacific may sell participation interests thereunder.

8.      On or about October 24, 2006, Sterling loaned another $1 million to the Debtors, secured by another mortgage on the Properties and guaranteed by Eli and Ben.

9.      The Grand Pacific Loan matured on August 16, 2007, and the Debtors and guarantors defaulted on the underlying note, mortgage and guaranty by failing to pay the loan. The note for the Grand Pacific Loan provides that the Debtors shall pay Grand Pacific any and all expenses that may be incurred by Grand Pacific in the collection of the indebtedness thereunder.  *See* note related to Grand Pacific Loan § 9(c), annexed hereto as Exhibit A.

10.      On December 28, 2007, following the Debtors' default on the Mezzanine Loan, 366 Madison purchased a junior participation interest in Grand Pacific's rights under the Mezzanine Loan.  The New York State Court has conclusively determined that the foregoing transaction was a purchase of a participation interest.  *See* Jaffe Decision at 6-7.

11.      On January 15, 2008, "to protect its interest in the [Properties], Grand Pacific purchased both of the Sterling loans."  Jaffe Decision at 3.  The notes in connection with the Sterling loans provide that the Debtors shall pay all costs and expenses, including attorneys' fees, incurred by Grand Pacific to enforce its rights under the notes.  *See* note related to $5.5 million

---

[1] Specifically, to evidence the indebtedness under the Grand Pacific Loan, Grand Pacific took an assignment of an existing $300,000 note and the Debtors executed a $5,062,500 note in favor of Grand Pacific.  The two notes were then consolidated under an amended note.  To secure payment of the amended note, Grand Pacific took an assignment of an existing $300,000 mortgage and the Debtors delivered a mortgage of the Properties to Grand Pacific.

4

Sterling loan at p. 4; note related to $1 million Sterling loan at § 9(c).  The notes in connection

with the Sterling loans and related assignments to Grand Pacific are annexed hereto as <u>Exhibit B</u>.

<u>The Collection Action</u>

12.    On April 16, 2009, Grand Pacific commenced an action to collect on certain

defaulted notes and guaranties (the "<u>Collection Action</u>") pending under index number

601164/2009 in the Supreme Court of the State of New York, New York County (the "<u>New</u>

<u>York State Court</u>") against the Debtors and the Bobkers to collect sums due under the $5.5

million Sterling loan, the Mezzanine Loan, the $1 million Sterling loan, and the related

guaranties.

13.    The defendants filed an answer and thereafter an amended answer in which the

Debtors and other defendants in the Collection Action raised thirteen affirmative defenses, seven

counterclaims and eight crossclaims.

14.    By decision and order dated June 7, 2010, the New York State Court granted

summary judgment (the "<u>Summary Judgment Decision</u>") in favor of Grand Pacific in the

Collection Action, appointed a referee to compute the amounts due, and severed the

counterclaims and crossclaims for separate disposition.  A copy of the Summary Judgment

Decision is annexed hereto as <u>Exhibit C</u>.  On December 20, 2011, the Appellate Division, First

Department, affirmed the Summary Judgment Decision in all respects.  A copy of the First

Department decision is annexed hereto as <u>Exhibit D</u>.

15.    On or about March 15, 2011, the New York State Court confirmed a special

referee's findings as to the amounts due under the three loans at issue in the Collection Action,

and on or about May 20, 2011, judgment in the amount of $13,710,123.36 was entered in favor

of Grand Pacific.  Grand Pacific has been attempting to collect on the judgment since that time. A copy of the judgment in the Collection Action is annexed hereto as <u>Exhibit E</u>.

16.     On September 29, 2012, the New York State Court entered a decision and order denying the defendants' request in the Collection Action to file a second amended answer and counterclaims that is virtually identical to the second amended answer and counterclaims the defendants filed in the Foreclosure Action discussed below.  In so ruling, the New York State Court stated that if it were "to review the merits of defendants' motion for leave to amend their answer, the court would find that at least a portion of the proposed second amended verified answer is '***palpably insufficient to state a cause of action [and] patently devoid of merit***.'"  *See* September 29, 2012 Decision and Order at 16 (emphasis added), annexed hereto as <u>Exhibit F</u>.

17.     On November 6, 2013, in a separate proceeding related to the Collection Action commenced by Joe Bobker against, among others, attorneys at Herrick, Feinstein LLP, the New York State Court (Judge Jaffe) granted defendants summary judgment and dismissed plaintiff's complaint.  Judge Jaffe's decision (the "<u>Jaffe Decision</u>") is annexed hereto as <u>Exhibit G</u>.

<u>The Foreclosure Action</u>

18.     On April 17, 2009, Grand Pacific commenced an action (the "<u>Foreclosure Action</u>") pending under index number 008084/2009 in the Supreme Court of the State of New York, Westchester County (the "<u>Westchester State Court</u>") by filing a complaint to foreclose on the mortgage securing the Grand Pacific Loan and for entry of judgment against Joe Bobker on his guaranty.

19.     On July 17, 2009, the defendants answered and admitted executing and delivering the note and mortgage under the Grand Pacific Loan and failing to pay the amounts due thereunder.  On August 6, 2009, the defendants served an amended answer, in which they

asserted the same thirteen affirmative defenses, seven counterclaims and eight crossclaims stated in the Collection Action.

20.    On July 22, 2010, Grand Pacific filed a motion for summary judgment prior to discovery.  The Westchester State Court held that Grand Pacific has made out a *prima facie* case for foreclosure, although it also held that the defendants had raised issues of fact with respect to their default on the Grand Pacific Loan.

21.    On April 19, 2011, the Westchester State Court permitted the Debtors and the other defendants to serve a second amended answer.

22.    Following two years of discovery, Grand Pacific again moved for summary judgment based on the defendants' amended pleadings and the evidence adduced in discovery. In a ruling dated March 28, 2013, the Westchester State Court made the following rulings with respect to Grand Pacific:

- Denying Grand Pacific summary judgment of foreclosure;

- Denying summary judgment on defendants' first, second and fifth counterclaims/crossclaims;

- Granting summary judgment dismissing fourth counterclaim/crossclaim (Joe Bobker's guaranty is enforceable, and Grand Pacific is entitled to judgment on that claim);

- Granting summary judgment dismissing third counterclaim/crossclaim (conversion); and

- Granting summary judgment striking defendants' first, second, third, fifth, sixth, tenth, eleventh, and twelfth affirmative defenses.

A copy of the March 28, 2013 Westchester State Court decision is annexed hereto as <u>Exhibit H</u>.

23.    Grand Pacific appealed the post-discovery summary judgment decision.  On appeal, on December 10, 2014, the Appellate Division, Second Department, ordered the modification of the Westchester State Court order to provide, with respect to Grand Pacific:

7

(i) summary judgment to Grand Pacific striking the fourth, seventh, eighth, and ninth affirmative defenses (resulting in all affirmative defenses being stricken); and (ii) summary judgment to Grand Pacific dismissing the defendants' first and second counterclaims (resulting in the dismissal of all counterclaims other than the equitable elements of the fifth counterclaim). The Appellate Division affirmed the Westchester State Court's denial of summary judgment on the complaint for foreclosure. A copy of the Second Department's decision on appeal is annexed hereto as Exhibit I.

24.    The Westchester State Court scheduled a trial date of April 27, 2015 for the Foreclosure Action.

The Chapter 11 Cases

25.    On March 25, 2015 (the "Petition Date"), less than a month before the scheduled trial of the Foreclosure Action, the Debtors filed the Chapter 11 Cases. Each of the Debtors' voluntary petitions is signed by Eli Bobker, as the manager of the managing member of the Debtors, and by Jonathan Pasternak, Esq. on behalf of DelBello Donnellan Weingarten Wise & Wiederkehr, LLP, the Debtors' bankruptcy counsel.[2]    The Chapter 11 Cases are jointly administered pursuant to an order entered by the Court on April 15, 2015.

26.    On April 7, 2015, the Debtors filed a notice of removal of the Foreclosure Action.

27.    The removal of the Foreclosure Action is consistent with the Debtors' stated intentions as set forth in the Rule 1007 Declaration. Much of the rest of the Rule 1007

---

[2] Not coincidentally, the Petition Date is also one day prior to a referee's hearing in the New York State Court regarding Grand Pacific's motion to seek an installment payment order against only the Bobkers. By letter dated March 25, 2015 from Debtors' counsel, Mr. Pasternak, to counsel for Grand Pacific, Mr. Pasternak too the position that the referee's hearing was stayed by the Debtors' bankruptcy filings, which Grand Pacific disputed. At the hearing the following day, the state court referee determined that the stay did not apply to the non-debtor Bobker defendants and conducted the hearing on Grand Pacific's request for an installment payment order.

Declaration, however, is a recitation of the Debtors' version of facts that were argued and rejected in the state court actions.

28.     For example, the Rule 1007 Declaration states that "[u]pon information and belief, and undisclosed to the Debtors and guarantors at the time of closing, Global One, 366 Madison and United Asian were shell companies owned and/or controlled by the owners and/or the senior management at Grand Pacific." Rule 1007 Declaration ¶ 17. This misrepresentation contravenes the findings of the Second Department, which held that "[t]he submissions in support of the motions also demonstrated that, contrary to the Bobker respondents' allegation, Grand Pacific did not fail to disclose its relationship with Global One and 366 Madison." Second Department decision at 4.

29.     Eli Bobker then states that "[u]pon information and belief, 366 Madison breached the terms of the Operating Agreements on December 28, 2007 by purchasing the $1,637,500 mezzanine loan outright from Grand Pacific and acquiring a $362,500 interest from Grand Pacific in its $5,362,500 second property mortgage," and that "Grand Pacific was aware of the terms of the Operating Agreements and that such transfer violated the terms thereof. The parties 'papered' the sale to look like a participation." Rule 1007 Declaration ¶¶ 20, 21. Eli Bobker's sworn testimony is again refuted by judicial determination: The New York State Court has held that neither Grand Pacific nor 366 Madison signed the Operating Agreements and thus cannot be held liable for breaching them. *See* Jaffe Decision at 10. Moreover, the New York State Court has determined that 366 Madison did not purchase the mezzanine loan from Grand Pacific, but rather purchased a participation interest in the Mezzanine Loan. Jaffe Decision 6-7.

30.     Mr. Bobker repeats this knowingly false claim at paragraph 26 of the Rule 1007 Declaration: "As specified above, 366 Madison had secretly acquired the Grand Pacific

Mezzanine Loan, and a $365,500 portion of the Grand Pacific First Mortgage.  In addition, Grand Pacific (via 366 Madison) acquired the Sterling Loans.  Each of these transactions, *inter alia*, expressly breached the Operating Agreements."   This falsehood is again inconsistent with adjudicated facts.  *See* Jaffe Decision 6-7, 10.

31.    Finally, as the premise of the Debtors' purported claim against Grand Pacific in the Chapter 11 Cases, Mr. Bobker states that "Grand Pacific's conduct, breach of fiduciary duty, breach of contract, and bad faith dealings have forced the Debtors into financial distress and had rendered them unable to make payments on the $5,362,500 Grand Pacific second mortgage, … as well as deprive them of the millions in profit they would have made had they proceeded with the sale to Gurevich."  Rule 1007 Declaration ¶ 39.  This paragraph of the Rule 1007 Declaration is also without basis.[3]

32.    First, the First Department has already decided against the Debtors on the breach of fiduciary duty claim:  "Here, the written operating agreements submitted in support of the motions demonstrated an intent to form a limited liability company, not a partnership or joint venture that would have given rise to a fiduciary relationship."  Foreclosure Action appeals decision at 3.  *See also* Foreclosure Action summary judgment decision at 22 ("While at times defendants contend that the parties' dealings had been a joint venture, this Court must agree with all moving parties that no legal joint venture has been proven to exist between defendants and any other party because there are no allegations of, let alone any supporting proof, that any of the parties had agreed to share control of the Hale Project or responsibilities for its losses.").

33.    Second, the New York State Court has already concluded that the Debtors and the Bobkers cannot allege a breach of contract claim against Grand Pacific because Grand Pacific is

---

[3] In fact, the site approval for the development of the Properties has long since lapsed and the Properties sit as vacant lots.

not a party to the operating agreements.  *See* Jaffe Decision at 10.  As discussed below, the

Debtors are collaterally estopped from litigating the same issues, including Grand Pacific's

alleged breach of contract, that give rise to their potential equitable subordination claim.  *See In*

*re Assante*, 470 B.R. 707 (Bankr. S.D.N.Y. 2012) (dismissing equitable subordination claim

against mortgagee as "barred by collateral estoppel because the issues [the debtor] seeks to

litigate are identical to the issues necessarily decided by the [state court], and these very same

issues were already fully and fairly litigated in the foreclosure action").

34.      Lastly, the claim that the Debtors were damaged by Grand Pacific's actions in

preventing the Debtors from consummating a sale to Jurevich has already been determined by

the New York State Court to be non-actionable, because "[t]he evidence submitted in support of

the motions established, prima facie, that the Bobker respondents could not have reasonably

relied on alleged oral representations concerning the mortgage, the associated note, and the

operating agreements.  Additionally, 'the loss of an alternative contractual bargain … cannot

serve as a basis for fraud or misrepresentation damages."  Foreclosure Action appeals decision at

4 (citations omitted).

35.      The Rule 1007 Declaration is sworn to under penalty of perjury by Eli Bobker, an

attorney licensed to practice in New York.

## ARGUMENT

**I.      THE DEBTORS, ELI BOBKER, AND THE DEBTORS' ATTORNEYS SHOULD
BE SUBJECT TO SANCTIONS FOR THE BAD FAITH FILING OF THE
CHAPTER 11 CASES**

36.      Bankruptcy Rule 9011, 28 U.S.C. § 1927 and section 105 of the Bankruptcy Code

each provide an independent basis to impose sanctions for wrongful conduct, including the bad

11

faith filing of a bankruptcy petition.  *In re Intercorp Int'l, Ltd.*, 309 B.R. 686, 692 (Bankr.

S.D.N.Y. 2004).

37.    Pursuant to Bankruptcy Rule 9011, the signature by an attorney on any paper filed

with the court (including a voluntary petition) constitutes a certification that:

> [T]o the best of the person's knowledge, information, and
> belief, formed after an inquiry reasonable under the
> circumstances,--
>
> (1)    it is not being presented for any improper purpose,
> such as to harass or to cause unnecessary delay or
> needless increase in the cost of litigation;
>
> (2)    the claims, defenses, and other legal contentions
> therein are warranted by existing law or by a non-
> frivolous argument for the extension, modification,
> or reversal of existing law or the establishment of
> new law;
>
> (3)    the allegations and other factual contentions have
> evidentiary support or, if specifically so identified,
> are likely to have evidentiary support after a
> reasonable opportunity for further investigation or
> discovery; and
>
> (4)    the denials of factual contentions are warranted on
> the evidence or, if specifically so identified, are
> reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011.

38.    "In determining whether to exercise discretion to impose Rule 9011 sanctions, the

Court should be guided by the purposes of Rule 9011 sanctions, which is to 'deter repetition of

such conduct or comparable conduct by other similarly situated.'"  *In re Parikh*, 508 B.R. 572,

584 (Bankr. E.D.N.Y. 2014) (citing Bankruptcy Rule 9011(c)(2)).  However, compensation also

is a purpose of Bankruptcy Rule 9011.  *See id.* (citing Bankruptcy Rule 9011(c)(1)(A)).

39.    Awarding sanctions under the "improper purpose" prong of Bankruptcy Rule

9011(b)(1) requires a finding of subjective bad faith, which may be inferred from a frivolous

12

bankruptcy filing.  *Id.* at 584-85.  In the Second Circuit, the leading case on sanctions for bad faith filings is *In re Cohoes Industrial Terminal, Inc.*, 931 F.2d 222, 227 (2d Cir. 1991), which held that, in considering sanctions under Bankruptcy Rule 9011, "[a] petition may be deemed frivolous if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings."  The Second Circuit further noted that "an entity may not file a petition for reorganization which is solely designed to attack a judgment collaterally--the debtor must have some intention of reorganizing."  *Id.* at 228; *see also In re St. Stephen's 350 East 116th St.*, 313 B.R. 161, 171 (Bankr. S.D.N.Y. 2004) (noting that an affirmation filed in an attempt to re-litigate issues already decided in secured lender's favor on the merits in the state court is sanctionable in a bad faith filing context).  Courts in this circuit have applied the same standard to motions to dismiss for bad faith and sanctions based on bad faith.  *In re Intercorp Int'l, Ltd.*, 309 B.R. at 693.  However, where a movant must establish "cause" for dismissal by a preponderance of the evidence under section 1112(b) of the Bankruptcy Code, the evidence of sanctionable conduct must be "clear" or "substantial."  *Id.*  Lastly, the safe harbor provisions of Bankruptcy Rule 9011 do not apply in the context of sanctions for a bad faith filing of a bankruptcy petition.  Fed. R. Bankr. P. 9011(c)(1)(A); *see also Cohoes Indus. Terminal, Inc.*, 931 F.2d at 694, n.10.

40.    Awarding sanctions under the "frivolous" prong of Bankruptcy Rule 9011(b)(2) requires the movant to demonstrate that the attorney failed to make a reasonable inquiry into whether claims asserted are warranted in law, which employs an objective bad faith standard requiring a showing of frivolousness.  *In re Parikh*, 508 B.R. at 585.

13

41.     Under the "reasonable investigation" prong of Bankruptcy Rule 9011(b)(3), which places a duty on attorneys to make an affirmative investigation into facts represented in documents submitted to the court, sanctions may be awarded where an attorney fails to independently verify publicly available facts to determine if the client representations are objectively reasonable. *Id.* at 585.

42.     In addition to Bankruptcy Rule 9011(b)(3), the Court may award sanctions under 28 U.S.C. § 1927, which provides that

> Any attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  Furthermore, section 105 of the Bankruptcy Code provides a basis to award sanctions for bad faith conduct when the imposition of sanctions is tied to a specific provision of the Bankruptcy Code. *In re Smart World Techs., LLC*, 423 F.3d 166, 184 (2d. Cir. 2005).

**The Debtors' Attorneys And Eli Bobker Should
Be Sanctioned Under Bankruptcy Rule 9011 And/Or 28 U.S.C. § 1927**

43.     The Debtors' attorneys and Eli Bobker should be sanctioned under Bankruptcy Rule 9011(b)(1), (2), and/or (3) for filing the Chapter 11 Cases in bad faith and signing the petitions, for submitting and certifying the Rule 1007 Declaration containing blatantly false and misleading assertions, and for failing to perform the barest investigation of the facts and legal theories in the Rule 1007 Declaration.  Moreover, by their actions in filing the Chapter 11 Cases and the pleadings therein, the Debtors' attorneys and Eli Bobker have unnecessarily and vexatiously multiplied the proceedings in connection with the Foreclosure Action.

44.     Here, sanctions are warranted based on the clear and substantial evidence of the Debtors' bad faith in commencing the Chapter 11 Cases solely to delay and hinder Grand

14

Pacific's legitimate efforts to exercise its rights as a secured creditor in the Foreclosure Action, as set forth in the Motion to Dismiss.  For the purposes of imposing sanctions under Bankruptcy Rule 9011(b)(1), the intent to delay or hinder can be inferred from the Debtors' bad faith filing.  The Debtors' attempt to re-litigate facts and legal theories already adjudicated in the Collection Action and the Foreclosure Action also give rise to sanctions under Bankruptcy Rule 9011(b)(1).  *See In re St. Stephen's 350 East 116th St.*, 313 B.R. at 171.

45.     Moreover, the Eli Bobker and the Debtors' attorneys should be sanctioned under Bankruptcy Rule 9011(b)(2) for frivolous claims and defenses based on the misleading statements in the Rule 1007 Declaration 9011(b)(2) that have already been adversely adjudicated against the Debtors.  All affirmative defenses and counterclaims have been stricken or dismissed, and all that remains is a garden variety foreclosure trial.  The factual bases for the Debtors' purported equitable subordination claim that they intend to bring in the Chapter 11 Cases have been rejected by the New York and Westchester State Courts.  "Federal courts in the Second Circuit have held that where the same allegations of misconduct were raised as affirmative defenses and decided against a debtor, the same factual allegations cannot be used in a subsequent proceeding in Bankruptcy Court to subordinate the creditor's claims or otherwise attack the validity of the creditor's lien."  *In re Assante*, 470 B.R. 707, 712 (Bankr. S.D.N.Y. 2012) (quotations and citation omitted); *see also In re 9281 Shore Road Owners Corp.*, 214 B.R. 676 (Bankr. E.D.N.Y. 1997) (dismissing debtor's equitable subordination claim against a mortgage holder where debtor sought to relitigate claims that were identical to its affirmative defenses and counterclaims in the state court foreclosure action).

46.     Lastly, the litigation with Grand Pacific is the only issue that needs to be addressed in the Chapter 11 Cases.  Thus, at a minimum, Debtors' counsel should have reviewed

15

the decisions rendered by the state trial and appellate courts in the Foreclosure Action and the Collection Action. Such a review would have made clear that many of the allegations asserted in the Rule 1007 Declaration were false and misleading, and the filing of the Chapter 11 Cases was an improper litigation tactic to delay and hinder Grand Pacific's rights as a mortgagee.

**The Debtors, Eli Bobker, And/Or The Debtors' Attorneys
Should Be Sanctioned Under Section 105 of the Bankruptcy Code**

47.   Section 1112(b) of the Bankruptcy Code provides for the dismissal of bankruptcy cases for cause, including cases filed in bad faith. As set forth in the Motion to Dismiss, these Chapter 11 Cases have all the indicia of bad faith filings, and the bad faith conduct of Eli Bobker and the Debtors' attorneys can be inferred from the Chapter 11 Cases being commenced in bad faith. The Court should exercise its equitable powers under section 105 of the Bankruptcy Code, in furtherance of section 1112(b), to deter the bad faith filing of future chapter 11 cases by imposing sanctions on the Debtors, Eli Bobker, and the Debtors' attorneys.

## CONCLUSION

For all the reasons set forth herein, Grand Pacific respectfully requests that the Court enter an order imposing sanctions against the Debtors, Eli Bobker and the Debtors' attorneys and awarding Grand Pacific its costs and expenses, including attorneys' fees, incurred in connection with the Chapter 11 Cases, and grant Grand Pacific such other and further relief as may be just and proper.

16

Dated: New York, New York
April 17, 2015

HERRICK, FEINSTEIN LLP
*Attorneys for Grand Pacific Finance Corp.*

By: ___/s/  Stephen B. Selsbt_____
     Stephen B. Selbst
     Hanh V. Huynh
Two Park Avenue
New York, NY  10016
(212) 592-1400
(212) 592-1500
sselbst@herrick.com
hhuynh@herrick.com