Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - - - - - - - - - - - - x

4    In the Matter of:

5

6    97-111 HALE, LLC and 100-114

7    HALE, LLC,

8                                    Case No. 15-22381-rdd

9          Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   In the Matter of:

12

13   100-114 HALE, LLC,

14                                   Case No. 15-22382-rdd

15         Debtor.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   GRAND PACIFIC FINANCE CORP.,

18                 Plaintiff,

19         v.                        Adv. Case No. 15-08224-rdd

20   97-111 HALE, LLC, et al.,

21                 Defendants.

22   - - - - - - - - - - - - - - - - - - - - - - - - - - x

23

24

25

Page 2

```
 1                        U.S. Bankruptcy Court

 2                        300 Quarropas Street

 3                        White Plains, New York

 4

 5                        May 8, 2015

 6                        12:08 PM

 7

 8    B E F O R E :

 9    HON ROBERT D. DRAIN

10    U.S. BANKRUPTCY JUDGE

11

12

13

14    Hearing re:  15-22381 - Initial Case Conference

15

16    Hearing re:  Motion for Sanctions Pursuant to 11 U.S.C. §

17    105(a), 28 U.S.C. § 1927, and/or Bankruptcy Rule 9011 filed

18    by Hanh V. Huynh on behalf of Grand Pacific Finance Corp.

19

20    Hearing re:  Motion of Grant Pacific Finance Corp. for (I)

21    Dismissal of the Chapter 11 Cases, or (II) in the

22    Alternative, for Relief from the Automatic Stay filed by

23    Hanh V. Huynh on behalf of Grand Pacific Finance Corp.

24

25    Hearing re:  Debtors' Omnibus Objection to the Motions of
```

Page 3

1    Grand Pacific Finance Corp. for (I) Dismissal of the Chapter

2    11 Cases, or (II) in the Alternative, for Relief from the

3    Automatic Stay, and (III) For Sanctions Pursuant to 11

4    U.S.C. § 105(a), 28 U.S.C. §1927, and/or Bankruptcy Rule

5    9011 (related document(s)18, 17) filed by Julie Cvek Curley

6    on behalf of 100-114 Hale, LLC, 97-111 Hale, LLC

7

8    Hearing re:  15-22382 - Debtors' Omnibus Objection to the

9    Motions of Grand Pacific Finance Corp. for (I) Dismissal of

10   the Chapter 11 Cases, or (II) in the Alternative, for Relief

11   from the Automatic Stay, and (III) For Sanctions Pursuant to

12   11 U.S.C. § 105(a), 28 U.S.C. § 1927, and/or Bankruptcy Rule

13   9011 (related document(s)18, 17) filed by Julie Cvek Curley

14   on behalf of 100-114 Hale, LLC, 97-111 Hale, LLC

15

16   Hearing re:  Adversary - 15-08224 - Status Conference

17

18

19

20

21

22

23

24

25   Transcribed by:  Dawn South

Page 4

```
 1   A P P E A R A N C E S :

 2   DELBELLO DONNELLAN WEINGARTEN WISE & WIEDERKEHR, LLP

 3        Attorneys for the Debtors

 4        One North Lexington Avenue

 5        White Plains, NY 10601

 6

 7   BY:   JONATHAN S. PASTENAK, ESQ.

 8         JULIE CVEK CURLEY, ESQ.

 9

10   HERRICK, FEINSTEIN LLP

11        Attorney for Grand Pacific Financing Corp.

12        2 Park Avenue

13        New York, NY 10016

14

15   BY:   STEPHEN B. SELBST, ESQ.

16

17   ALSO PRESENT:

18   GREG ZIPES, ESQ.

19

20

21

22

23

24

25
```

```
 1                  P R O C E E D I N G S
 2              THE COURT:  All right.  97-111 Hale, LLC and
 3      100-114 Hale LLC?
 4          (Pause)
 5              THE COURT:  Okay.  There are a lot of matters on
 6      the calendar for this case, also it's initial case
 7      conference, as well as a motion for stay relief or
 8      dismissal, and a motion for sanctions.
 9              So as far as the case conference I read the
10      pleadings on this obviously.  It's a single asset real
11      estate case.  As far as secured debt is concerned you have
12      the one secured creditor?
13              MR. PASTERNAK:  Yes, I mean there are probably
14      some outstanding city wide plans real estate taxes which
15      would be --
16              THE COURT:  But there's no cash, right, so there's
17      no cash collateral?
18              MR. PASTERNAK:  That's correct.  No, we're talking
19      about a hole in the ground --
20              THE COURT:  Right.
21              MR. PASTERNAK:  -- well not a hole in the ground,
22      a paved parcel.
23              THE COURT:  A development property.
24              MR. PASTERNAK:  Yes, Your Honor.
25              THE COURT:  And operating reports are not due yet?
```

Page 6

1          MR. PASTERNAK:  That's correct.  We've done our

2    341, we've done our initial debtor interview, and our first

3    report is not due yet, that's correct, Your Honor, but it's

4    not going to show any monetary activity at this point.

5          THE COURT:  Right.  Are you anticipating retaining

6    anyone besides your firm?

7          MR. PASTERNAK:  The only one I would think of is,

8    as we will develop this case, is zoning counsel, Your Honor.

9    There was prepetition zoning counsel on this.

10          THE COURT:  Okay.

11          MR. PASTERNAK:  We possibly -- and architects so

12    that we could get the site development work that we've

13    eluded to back on track.

14          THE COURT:  And maybe this is presaging the motion

15    to dismiss and/or lift the stay, but where's the money going

16    to come for that, the development work?

17          MR. PASTERNAK:  Yeah, we've already approached

18    several lenders for both DIP financing and exit finishing.

19          THE COURT:  All right.

20          MR. PASTERNAK:  So the DIP element would be to

21    come in, we believe it's about $300,000, to get all of the

22    preliminary approvals reinstated, and be in a position to

23    break ground with a full-blown construction loan.  Obviously

24    along the way we're going to adjudicate claims and figure

25    out whether Grand Pacific has allowed claims.

Page 7

```
 1                THE COURT:  As a realistic matter --

 2                MR. PASTERNAK:  Yeah.

 3                THE COURT:  -- is the ability to get that

 4    financing largely premised on Grand Pacific not having an

 5    allowed secured claim?

 6                MR. PASTERNAK:  No.

 7                THE COURT:  No.

 8                MR. PASTERNAK:  No, it's not.

 9                THE COURT:  So the debtor believes there's enough

10    value in the property to get a development loan even with

11    the secured debt that's already on it?

12                MR. PASTERNAK:  Well of course there's a delta

13    between, you know, what is claimed owed and what we believe

14    could be owed, but there has already been discussions with a

15    few lenders about the total construction cost and then what

16    would be the resulting value of the property.  And the delta

17    is even higher than the alleged total debt of $17 million or

18    18 million.  So there is significant equity if we develop

19    the property.

20                As we sit here today, depending on what secured

21    creditor is owed, there may or there may not be an equity in

22    the current condition of the property.

23                THE COURT:  Right.  Okay.

24                MR. PASTERNAK:  It's a very valuable piece of -- a

25    very strategic property.  I mean we've laid this out, Your
```

Page 8

1    Honor, I don't want to rehash the 1007 unless Your Honor has

2    questions.

3              THE COURT:  No, it's okay.

4              All right.  Mr. Zipes, do you have any questions?

5              MR. ZIPES:  No, Your Honor.

6              THE COURT:  Okay.  All right.  So why don't we

7    turn then to the motion to dismiss/motion for leave from the

8    stay.

9              MR. PASTERNAK:  Sure, Your Honor.

10             MR. SELBST:  Good afternoon, Your Honor, Stephen

11   Selbst, Herrick, Feinstein for Grand Pacific.

12             Your Honor, you had said earlier that there was

13   some issue about papers getting to you?

14             THE COURT:  Yeah, I didn't get them from either

15   side.

16             MR. SELBST:  Oh, we have the FedEx and we know

17   they were delivered to you, Your Honor.

18             THE COURT:  Well any way, didn't --

19             MR. SELBST:  I apologize.

20             THE COURT:  You know Ms. Lee is on vacation, so

21   all hell has broken loose.

22         (Laughter)

23             MR. PASTERNAK:  We actually were told that and

24   delivered our papers.  We were told to deliver them right to

25   Ms. Salvo (ph).

Page 9

1              THE COURT:  All right.  Well --

2              MR. PASTERNAK:  -- which we did, and she's

3      acknowledged that, but --

4              THE COURT:  Okay.  All right.  Fine.

5              MR. PASTERNAK:  -- sorry.

6              MR. SELBST:  Well, I'm sorry if there was a mix up

7      because we --

8              MR. PASTERNAK:  That's all right.

9              MR. SELBST:  -- have a FedEx received from

10     yesterday.

11             THE COURT:  That's all right.

12             MR. SELBST:  Any way.

13             THE COURT:  All right.

14             MR. SELBST:  Your Honor, as Your Honor knows from

15     reading the papers the debtor -- Grand Pacific believes

16     these cases should be dismissed as bad faith filing.  And as

17     we've said in the papers, we believe that this lines up

18     squarely with the CTC factors, which I know Your Honor is

19     very well familiar with.

20             It is undisputed that this is a two-party dispute

21     with a very long litigation history.

22             The debtors' Chapter 11 petition showed as its

23     creditors two prior law firms and a personal injury

24     claimant, and at the 341 meeting they said we're going to

25     allow the stay to be lifted to allow that personal injury

Page 10

1    claim to access the insurance proceeds.

2            So really what we have here is beyond dispute, a

3    case between Grand Pacific and the debtors.

4            There's been no interest paid by the debtor on the

5    Grand Pacific loans since 2007.  There are no real estate

6    taxes paid on this property since 2007.  And as we allege in

7    our papers, Grand Pacific has reached into its pockets to

8    pay $150,000 of real estate taxes over that period.  As

9    Mr. --

10           THE COURT:  Look, I'm going to cut you short.  I

11   think CTC was a very limited fact case where the debtor was

12   not eligible in the first place, and I believe if a debtor

13   has a legitimate business prospect and a legitimate use for

14   using Chapter 11 then it has a right to file Chapter 11,

15   whether there's 1 creditor or 10,000.  Congress doesn't say

16   you're only eligible to be in Chapter 11 if you have more

17   than one creditor.  I'm just not -- I'd like to focus more

18   on what the use of this case is.

19           MR. SELBST:  I'll be happy to go through it, Your

20   Honor.

21           THE COURT:  Okay.

22           MR. SELBST:  The reason that I started with Grand

23   Pacific and I'm going to move on is because we believe that

24   it does line up in terms of the totality of the factors.

25   But I want to talk about what the debtors have argued about

Page 11

1    dismissal and why we think this is inappropriate.

2             First off, we don't believe -- the debtors

3    basically say they want to relitigate claims against Grand

4    Pacific.

5             THE COURT:  They don't, they specifically say

6    they're not doing that.  The only one they want to litigate

7    is the one that hasn't been ruled on yet, and I -- maybe I'm

8    reading between the lines.  There was a trial scheduled on

9    that one I thought.

10            MR. SELBST:  That's correct, Your Honor.

11            THE COURT:  All right.

12            MR. SELBST:  There was a trial in West Chester

13   state court as to one issue and one issue alone, which was

14   as to the Grand Pacific loans whether Grand Pacific's

15   exercise of its foreclosure remedy was in good faith.

16            But here's what's not in dispute, Your Honor.

17   There were two sets of leans that Grand Pacific had.  It had

18   the original loans that it made, and during the course of

19   this it acquired the loans of the prior lender, Sterling.

20            In the New York collection action Grand Pacific

21   got a judgment on those Sterling loans in the amount of

22   $9.4 million, and it got that judgment in May of 2011, and

23   with the post-petition interest that judgment now amounts to

24   approximately $12.7 million.  And we believe, Your Honor,

25   that that judgment is protected by the Rooker-Feldman

1   Doctrine.

2           THE COURT:  But they're not -- you're not looking

3   to challenge that judgment except maybe the amount, right?

4           MR. PASTERNAK:  Very specifically it is a claim or

5   a lien, we don't dispute that.  We believe it is capable of

6   equitable subordination.  And also in the Supreme Court

7   decision that granted summary judgment it specifically -- in

8   a weird way preserved the debtors' counterclaims and said

9   that could be subsumed into the trial on the foreclosure.

10          THE COURT:  But since then your counterclaims,

11  except for number 5, have gone by the boards, right?

12          MR. PASTERNAK:  Admittedly --

13          THE COURT:  Right.

14          MR. PASTERNAK:  -- we're not seeking to relitigate

15  any of that.

16          THE COURT:  Okay.  So --

17          MR. PASTERNAK:  But counterclaim 5 is a big one.

18          THE COURT:  Okay.

19          MR. SELBST:  But, Your Honor, here's my point

20  about this.  We believe that under Rooker-Feldman they can't

21  equitably subordinate that claim.

22          The Rooker-Feldman Doctrine, the purpose of that

23  is to prevent state court losers from being able to

24  recharacterize, set aside, or challenge valid state court

25  judgments irrespective of whatever the merits of their claim

1   on the Grand Pacific loan, and of course we think there are

2   none.  They can't challenge, and including equitable

3   subordination we don't believe, that valid judgment on

4   Sterling.  The time to challenge that came and went, and

5   this -- Your Honor, this is -- there's nothing new under the

6   sun, Ecclesiastes taught us that.

7          There'd been other debtors who've done that,

8   there'd been other debtors who said there's a state court

9   foreclosure judgment or a state court judgment and they've

10  sought equitable subordination.  There's a case called In

11  Sunshine III Real Estate, which is in Massachusetts, and

12  there the debtors did the same thing they're doing here.

13         THE COURT:  But if it's based on claim number 5?

14  If the equitable subordination is based on claim number 5?

15         MR. SELBST:  They -- their chance --

16         THE COURT:  Counterclaim number 5, excuse me.

17         MR. SELBST:  That's a claim that they -- first off

18  a lot of the allegations that they've made have been

19  previously rejected.  We think they have substantial claim

20  preclusion problems -- or issue preclusion problems.

21         THE COURT:  Well, maybe, but that's different than

22  -- I mean the Court left open claim number 5, so

23  obviously --

24         MR. SELBST:  Not in dispute, Your Honor, that

25  claim is open, but we don't think -- respectfully we don't

1   think that that claim allows them to go after the Sterling

2   loans, we think that's only valid as to the Grand Pacific

3   loans, and we think that the Sterling loan -- they said

4   themselves as to the -- the Court said as to the Sterling

5   loans defendants do not allege, let alone offer evidence

6   intending to demonstrate that Sterling, the original lender

7   under both notes, fraudulently induced them.

8           There is no basic to challenge the Sterling loans,

9   it's a valid judgment for 12.7, and we believe that under

10  Rooker-Feldman they can't equitably subordinate that loan.

11          THE COURT:  But what -- I guess the context we

12  have here is a motion to dismiss on that basis, right?

13          MR. PASTERNAK:  Yes.

14          THE COURT:  Is that a summary proceeding?  I'm

15  just -- it would seem to me that maybe you should make your

16  motion to dismiss the subordination claim as opposed to

17  dismiss the case, because you're basically asking me to

18  apply Rooker-Feldman in the context of -- I mean I haven't

19  reviewed their complaint, I don't know what claim number 5

20  is or the like.

21          MR. SELBST:  Well actually --

22          THE COURT:  I mean when I read your motion I said,

23  well, yeah, he's going to win on this because they're

24  looking to relitigate everything, but there's a significant

25  claim that's open and I really don't know how it relates to

Page 15

1    -- I mean I think to apply Rooker-Feldman, to the extent

2    it's not just another way to say collateral estoppel or res

3    judicata.

4              MR. SELBST:  Which it's not.

5              THE COURT:  Well, I understand, but it's a pretty

6    detailed analysis, which I think maybe should be done in the

7    context of an adversary proceeding here, which is their

8    adversary proceeding.

9              MR. SELBST:  Right.  Well --

10             THE COURT:  As opposed to just dismissing the

11   case.

12             MR. SELBST:  They haven't -- of course they

13   haven't filed the adversary proceeding, but we believe --

14             THE COURT:  Well they moved to -- they -- I'm

15   assuming what they're going to do since they removed the

16   state court litigation is amend their complaint to add

17   equitable subordination, at which point you'll move to

18   dismiss the complaint.

19             MR. PASTERNAK:  That's correct.  That's correct.

20             MR. SELBST:  But as -- what I'm trying to suggest,

21   Your Honor, is this litigation was trial ready in the state

22   court.  They filed a Chapter 11, and we believe that the

23   right answer is that you should allow us to -- if you want

24   us to file a motion to remand back to the state court.

25             THE COURT:  I think that is the answer.  I think

1    that is, because -- I mean I can't really lift the stay

2    since it's already been removed.  I can give you an early

3    hearing on it, you know, that's fine.  You can say that to

4    Ms. Lee when she gets back next week.  But I think

5    technically I can't really lift the stay just for that

6    purpose, although that may be a legitimate purpose for a

7    remand.

8              MR. SELBST:  Well, I think Your Honor can, but I

9    understand that we haven't filed that remand motion.

10             THE COURT:  Well it's not -- yeah, I think so.

11             MR. SELBST:  I'd like to make just a couple more

12    points though, Your Honor.

13             Even under the best of circumstances, because we

14    think there are other reasons why this case should be

15    dismissed, under the best of -- under the best set of facts

16    these cases are months, if not years away, and tens of

17    millions of dollars away from being developable.

18             One of the things that was remarkable to us in the

19    response papers that Mr. Pasternak filed was that they both

20    admitted that there was no current zoning on this property

21    and acknowledged that it was 9 to 15 months away and 3- to

22    $500,000 in funds just to get to the zoning.  Beyond the

23    zoning of course they need development funds and they're

24    going to need funds pay off the valid claims of Grand

25    Pacific.

```
 1              There's no question --

 2              THE COURT:  Well they'll need something before

 3    then too because it's single asset real estate, so they'll

 4    need to start making the debt payments.

 5              MR. SELBST:  We're 45 days into that 90-day

 6    period, Your Honor.

 7              THE COURT:  Right, I understand.

 8              MR. SELBST:  This isn't an invitation for months

 9    more delay in a case that has now dragged on --

10              THE COURT:  Well not really.  If they don't make

11    the debt payments Congress dealt with that.

12              MR. PASTERNAK:  Well we could file a plan within

13    90 days.

14              THE COURT:  Well that has a reasonable prospect of

15    being confirmed.

16              MR. PASTERNAK:  Understood.

17              MR. SELBST:  And I'm trying to make the record on

18    that that there is no prospect that they're going to be able

19    to reasonably confirm a plan in 90 days.

20              THE COURT:  Well --

21              MR. SELBST:  Not a confirmable plan within 90

22    days, Your Honor.

23              THE COURT:  They could file the plan, then I have

24    to decide whether it's confirmable within a reasonable time.

25    It doesn't -- the 90 days doesn't apply to the reasonable
```

Page 18

1    time.  But they will have to show a roadmap of how they're

2    going to fund the case, and by then I'll know more about

3    this litigation, because it did seem to me that they would

4    have to at least in some measure deal with this debt before

5    they could raise more debt.

6            MR. SELBST:  And as I said, Your Honor, what they

7    said about the reorganizations is if we beat Grand Pacific,

8    if we get the zoning --

9            THE COURT:  Look, could I --

10           MR. SELBST:  -- if we get the financing.

11           THE COURT:  Can I just -- it seems to me besides

12   the practical issues that you're going to there are two

13   legal issues that the parties should focus on right away,

14   which is they both relate to the claims that have not been

15   adjudicated so far.

16           The first is why shouldn't that claim actually be

17   -- since I'm being told it was trial ready -- be dealt with

18   by the state court that's been living with this litigation?

19   And maybe the answer is going to be, well, because we want

20   to add an equitable subordination claim, and then I'd like

21   to get a little more briefing on that and how that relates

22   to not only the law under Rooker-Feldman and/or collateral

23   estoppel, if that happened, if the facts -- I mean obviously

24   if the facts that equitable subordination is being based on

25   have already been determined, but also the facts generally

1    as to why it wouldn't fit into Rooker-Feldman.

2             And it seems to me that the next step in this case

3    is going to be the remand motion, and I think I'd like to

4    adjourn the motion here to that date so that we can hear it

5    all then with some more of a record.

6             MR. SELBST:  Your Honor, I perfectly understand --

7             THE COURT:  And you may join that with, you know,

8    a 362(d)(3) motion too.

9             MR. SELBST:  I perfectly understand your concerns

10   about this, Your Honor, and I'm perfectly happy to

11   adjudicate it -- to adjourn this, but I'd ask you to give

12   them a short deadline for filing that complaint so we can

13   get this moving.

14            THE COURT:  Well, yeah.

15            MR. SELBST:  As you said they're staling and

16   they're staling.

17            THE COURT:  I think we should have the hearing

18   about 45 days from now, no later than that.

19            MR. SELBST:  Good.

20            THE COURT:  I don't -- you know, those legal

21   issues need to be dealt with then, I hope you have more of a

22   roadmap of what it will cost to develop the property too by

23   then.

24            MR. SELBST:  Thank you, Your Honor.

25            THE COURT:  Okay.

Page 20

1           MR. PASTERNAK:  Of course, Your Honor.

2           THE COURT:  All right.

3           MR. PASTERNAK:  We understand.

4           THE COURT:  Okay.  Thank you.

5      (Pause)

6           THE COURT:  And maybe you can reach some agreement

7   with Mr. Selbst so that he doesn't have to make another lift

8   stay motion.  If I -- you know what I'm saying.  I think all

9   the issues will be in front of me, including a lift stay

10   type of issue there, which he's already sort of made here,

11   but he --

12           MR. PASTERNAK:  Let's get a briefing schedule --

13           THE COURT:  All right.

14           MR. PASTERNAK:  -- in a consolidated fashion, Your

15   Honor.

16           THE COURT:  Okay.

17           MR. PASTERNAK:  We shouldn't have any problem

18   doing that.

19           THE COURT:  Okay.  All right, thank you.

20           MS. CURLEY:  Thank you.

21           MR. PASTERNAK:  Thank you, Judge.

22      (Whereupon these proceedings were concluded at 12:20

23   PM)

24

25

Page 21

1                     C E R T I F I C A T I O N

2

3      I, Dawn South, certify that the foregoing transcript is a

4      true and accurate record of the proceedings.

5      Dawn South

6      _____

7      Dawn South

8      AAERT Certified Electronic Transcriber CET**D-408

9

10

11

12     Date:  May 14, 2015

13

14

15

16

17

18

19

20

21

22      Veritext Legal Solutions

23      330 Old Country Road

24      Suite 300

25      Mineola, NY 11501

Digitally signed by Dawn South
DN: cn=Dawn South, o=Veritext, ou,
email=digital@veritext.com, c=US
Date: 2015.05.14 13:41:28 -04'00'