DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Attorneys for the Debtor*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200

JONATHAN S.  PASTERNAK
ERICA R.  FEYNMAN

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:                                                          Chapter 11
                                                                Lead Case No. 15-22381(RDD)
97-111 HALE, LLC and                                            (Jointly Administered)
100-114 HALE, LLC,

                                 Debtors.
------------------------------------------------------------------X

## JOINT PLAN OF REORGANIZATION UNDER
## CHAPTER 11 OF THE BANKRUPTCY CODE

99-111 Hale, LLC and 100-114 Hale, LLC (collectively, the "Debtors") hereby proposes

the following Joint Plan of Reorganization (the "Plan"), pursuant to the provisions of Chapter 11

of the Bankruptcy Code.  The rules of construction set forth in Section 102 of the Bankruptcy

Code shall apply to the construction of the terms and provisions set forth in this Plan.

## ARTICLE I

## DEFINITIONS

For the purposes of the Plan, the following terms shall have the respective meanings set

forth below (such meanings to be equally applicable to the singular and plural forms of the terms

defined, unless the context otherwise requires):

1.1    "*20-Day Vendor Claims*" shall mean a claim for any cost or expense of administration in

connection with this Chapter 11 Case allowed under Section 503(b)(9) of the Bankruptcy Code

(as defined below) and entitled to priority under Section 507(a)(1) of the Bankruptcy Code.  The holders of Equity Interests (as defined herein) do not believe there are such claims in this case.

1.2    "*Administrative Professional Fee Claim*" shall mean any claim of a Professional Person subject to allowance under 11 U.S.C. § 328, § 330, § 331 or an order of the Bankruptcy Court.

1.3    "*Adversary Proceeding*" shall mean the removed proceeding encaptioned <u>Grand Pacific Finance Corp. v. 97-111 Hale, LLC, 100-114 Hale, LLC, Et Al.</u>, Adv. Pro. No. 15-08224.

1.4    "*Allowed*" shall mean, whenever in the Plan the word "Allowed" precedes a defined term describing a Claim, that phrase will mean an Allowed Claim of the type described.

1.5    "*Allowed Claim*" shall mean any Claim or portion of a Claim (a) which has been scheduled pursuant to Section 521(1) of the Bankruptcy Code, other than a Claim scheduled by the Debtor as contingent, unliquidated or disputed; or (b) proof of which has been filed pursuant to Section 501(a) of the Bankruptcy Code on or before the Bar Date, and as to which no objection to the allowance thereof has been interposed within the period of time fixed by the Bankruptcy Code, Bankruptcy Rules (as defined below) or an order of the Bankruptcy Court, (c) as to which any objection has been determined by a Final Order (as defined below) of the Bankruptcy Court allowing such claim or any portion thereof or (d) which has otherwise been allowed by a Final Order of the Bankruptcy Court.

1.6    "*Avoidance Actions*" shall mean any cause of action assertable under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or state law if made applicable under such Bankruptcy Code sections.

1.7    "*Ballot*" shall mean the form transmitted to creditors with the Plan and Disclosure Statement, on which they may vote to accept or reject the Plan (as defined below) pursuant to Bankruptcy Rule 3018 and Section 1126 of the Bankruptcy Code.

1.8    "*Bankruptcy Code*" shall mean Title 11 U.S.C.  Sections 101 et.  seq., in effect on the Petition Date (as defined below).

1.9    "*Bankruptcy Court*" shall mean the United States Bankruptcy Court for the Southern District of New York, New York Division, and any Court having jurisdiction to hear appeals therefrom.

1.10    "*Bankruptcy Rule(s)*" shall mean the Federal Rules of Bankruptcy Procedure as applicable to a case under Title 11 of the United States Code and the Local Rules of the Bankruptcy Court, together with all amendments and modifications made from time to time thereto.

1.11    "*Bar Date*" shall mean the date fixed by Order of the Bankruptcy Court by which Proofs of Claim of various categories must be filed against the Debtor which date has been fixed by the Bankruptcy Court as June 15, 2015.

1.12    "*Business Day*" shall mean any day other than a Saturday or Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006.

1.13    "*Cash*" shall mean legal tender of the United States of America or cash equivalents.

1.14    "*Chapter 11 Case*" shall mean, collectively, the above captioned jointly administered cases commenced by the filing of voluntary petitions by the Debtors seeking relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court on the Petition Date.

1.15    "*Claim*" shall mean a claim as defined in Section 101(5) of the Bankruptcy Code, including without limitation, claims arising under Section 502 of the Bankruptcy Code.

1.16    "*Class*" shall mean any class of holders of Claims or Equity Interests (as defined herein) described in Articles II and III of the Plan.

1.17    "*Confirmation*" shall mean the entry of the Confirmation Order.

1.18    "*Confirmation Date*" shall mean the date upon which the Confirmation Order (as defined below) is entered by the Bankruptcy Court.

1.19    "*Confirmation Hearing*" shall mean the hearing held by the Court, following notice, to determine whether or not to enter a Confirmation Order.

1.20    "*Confirmation Order*" shall mean the Order of the Bankruptcy Court pursuant to Section 1129 of the Bankruptcy Code confirming the Plan.

1.21    "*Construction Lender*" shall mean a lender to be selected by the Debtors within 30 days of conclusion of the Adversary Proceeding and all appeals thereon.

1.22    "*Construction Loan*" shall mean the loan(s) to be provided to the Debtors after the Effective Date in the approximate aggregate amount of $60,000,000 in accordance with such loan agreements and documents to be executed by the Debtors and the Construction Lender in connection therewith.

1.23    "*Creditor*" shall mean: (i) an entity that has a Claim against the Debtor that arose at the time of or before the Petition Date concerning the Debtor; or (ii) an entity that has a Claim against the Debtor's Estate of the kind specified in Sections 348(d), 502(f), 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.24    "*Debtors*" shall mean, collectively, 97-111 Hale, LLC and 100-114 Hale, LLC.

1.25    "*Disbursing Agent*" shall mean the party that shall open and maintain a separate interest bearing attorney escrow bank account in which all cash received for purposes of distribution shall be deposited in accordance with Section 345 of the Bankruptcy Code and shall distribute payments under the Plan, which Disbursing Agent shall be DelBello Donnellan Weingarten Wise & Wiederkehr, LLP.

1.26    "*Disclosure Statement*" shall mean any disclosure statement describing the Plan, prepared and distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018.

1.27    "*Disputed Claim*" shall mean any Claim (other than an Allowed Claim) (i) which is scheduled pursuant to the Bankruptcy Code as disputed, contingent or unliquidated, or (ii) proof of which has been filed with the Bankruptcy Court and an objection to the allowance has been or is interposed within the period of time limitation fixed by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or an Order of the Bankruptcy Court for the filing of such objections, and as to which, such objection has not been determined by a Final Order (as defined below) of the Bankruptcy Court.

1.28    "*Effective Date*" shall mean the date that each of the conditions to effectiveness of the Plan set forth in Section 10.3 of the Plan is satisfied.

1.29    "Estate" shall mean, collectively, the Debtors' substantively consolidated estate created upon the filing of the Chapter 11 Case and all property of such estate pursuant to section 541(a) of the Bankruptcy Code.

1.30    "*Executory Contract*" shall mean any of the contracts and unexpired leases to which the Debtors are a party or were a party as of the Petition Date and which is executory within the meaning of Section 365 of the Bankruptcy Code.

1.31    "*Final Confirmation Order*" shall mean the Confirmation Order after it becomes a Final Order.

1.32    "*Final Order*" shall mean a Bankruptcy Court order or judgment which has not been reversed, stayed, modified, or amended and (i) as to which the time to appeal or seek review, rehearing, or certiorari has expired and as to which no appeal, petition for review, rehearing, or

certiorari is pending or (ii) as to which any right to appeal or seek review, rehearing, or certiorari

has been waived or (iii) an order or judgment which has been appealed, has been affirmed on

appeal and as to which affirmation the time for further appeal has expired; provided, however,

that no order or judgment shall be deemed not to be a Final Order solely because such order or

judgment is subject to the filing of a motion for reconsideration pursuant to Section 502(e)(2) of

the Bankruptcy Code or Bankruptcy Rules 3008 or 9024 or Rule 60 of the Federal Rules of Civil

Procedure.

1.33    "*General Administrative Expense Claim*" shall mean a claim for any cost or expense of

administration in connection with this Chapter 11 Case allowed under Section 503(b) of the

Bankruptcy Code (as defined below) and entitled to priority under Section 507(a)(1) of the

Bankruptcy Code, including, without limitation, any actual, necessary costs and expenses of

preserving the Estate and of operating the business of the Debtors, all allowances of

compensation for legal or other professional services or reimbursement of costs and expenses

under Sections 330, 331 and 503 of the Bankruptcy Code or otherwise allowed by the Court.

General Administrative Expense Claims expressly exclude 20-Day Vendor Claims.

1.34    "*General Unsecured Claim*" shall mean any Claim that is not a General Administrative

Expense Claim, Administrative Professional Fee Claim, Priority Tax Claim, Non-Tax Priority

Claim, 20-Day Vendor Claim or Secured Claim that may have arisen prior to the filing of the

Debtor's Chapter 11 Case and includes, without limitation, Claims based upon pre-petition trade

accounts payable, Claims based upon the rejection of an executory contract during pendency of

this Chapter 11 Case, or any Claim secured by a Lien on property of the Debtors that is of no

value or is determined to be unsecured pursuant to Section 506(a) of the Bankruptcy Code.

1.35    "*Governmental Unit*" shall mean a governmental unit as such term is defined in Section 101(27) of the Bankruptcy Code.

1.36    "*Grand Pacific*" shall mean Grand Pacific Finance Corp.

1.37    "*Holder*" shall mean a holder of a Claim or Equity Interest entitled to receive a distribution pursuant to the terms of this Plan.

1.38    "*Impaired*" shall mean impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.39    "*Interests*" shall mean any equity interests in the Debtors.

1.40    "*Liens*" shall mean any liens, as defined in Section 101(37) of the Bankruptcy Code or security interests, as defined in Section 101(51) of the Bankruptcy Code, and shall include any mortgage on real property.

1.41    "*Non-Tax Priority Claim*" shall mean any claim against the Debtor to the extent entitled to priority in payment under section 507(a)(4)-(6) of the Bankruptcy Code.

1.42    "*Person*" shall mean any individual, corporation, partnership, association, indenture trustee, organization, stock company, venture, estate, trust, Governmental Unit or any political subdivision thereof, Interests holders, retirees, or any other entity.

1.43    "*Petition Date*" shall mean  March 25, 2015.

1.44    "*Plan*" shall mean this Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code, as it may be amended, supplemented, or modified in accordance with the terms hereof from time to time.

1.45    "*Post-Petition*" shall mean the Petition Date or any date thereafter.

1.46    "*Pre-Petition*" shall mean any date prior to the Petition Date.

1.47    "*Priority Tax Claim*" shall mean a Claim against the Debtor to the extent entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.48    "*Proof of Claim*" shall have the meaning ascribed to it under Rule 3001 of the Bankruptcy Rules.

1.49    "*Property*" shall mean the collective land and improvements thereon located at 97-111 Hale Avenue and 100-114 Hale Avenue, White Plains, New York owned by the Debtors.

1.50    "*Professional Persons*" shall mean those Persons retained by the Debtor pursuant to an order of the Bankruptcy Court in accordance with Sections 327 of the Bankruptcy Code providing for compensation for services rendered prior to the Effective Date pursuant to Section 327, 328, 329, 330 and 331 of the Bankruptcy Code.

1.51    "*Pro Rata*" shall mean proportionally according to the total amount of Allowed Claims or Allowed Interests in a particular Class.

1.52     "*Reorganized Debtors*" shall mean the Debtors after the Confirmation Date.

1.53    "*Secured Claim*" shall mean a Claim of a Creditor secured by a valid, properly perfected and enforceable Lien on property and assets owned by the Debtor, to the extent of the value of such Creditor's interest in the Estate's interest in such property.

1.54    "*Scheduled*" shall mean set forth in the Schedules.

1.55    "*Schedules*" shall mean the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor, as they may be amended from time to time.

**ARTICLE II**

**<u>DESIGNATION OF CLASSES OF CLAIMS
AND INTERESTS</u>**

All Claims, as defined herein and in Section 101(5) of the Bankruptcy Code against the Debtors, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, and

all Interests in the Debtors, whether resulting in an Allowed Claim or an Allowed Interests or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

2.1    <u>Classification of Claims</u>.  Section 2.2 sets forth the designation of the Classes of Claims and Interests.  A Claim or Interests is classified in a particular Class for voting and distribution purposes only to the extent that the Claim or Interests qualifies within the description of the Class and is classified in a different Class or Classes to the extent any remainder of the Claim or Interests qualifies within the description of that different Class or Classes.  Unless otherwise provided, to the extent a Claim or Interests qualifies for inclusion in a more specifically defined Class than a more generally defined Class, it shall be included in the more specifically defined Class.  Each of the following sections of this Article II provides explanations of the different Claim classifications.  General Administrative Expense Claims, Administrative Professional Fee Claims, U.S. Trustee fees payable under 28 U.S.C. Section 1930 and 31 U.S.C. Section 3717 and Priority Tax Claims have not been classified and are excluded from the Classes set forth in Section 3.2 in accordance with Section 1123(a)(1) of the Bankruptcy Code.  The treatment to be provided for Allowed Claims or Interests pursuant to this Plan and the consideration provided for herein shall be in full and final satisfaction, settlement, release and discharge of such respective Claims or Interests.

2.2    <u>Classes</u>.  Unless otherwise ordered by the Bankruptcy Court, Class 1 is unimpaired under the Plan and the holders thereof are conclusively presumed to accept the Plan, and the votes of such holders would not need to be solicited.  For purposes of the Plan, those persons holding Claims against, or Interests in, the Debtor are grouped in accordance with Section 1122 of the Bankruptcy Code as follows:

Class 1 - shall consist of Holders of Non-Tax Priority Claims.

Class 2 - shall consist of the Disputed Secured Claims of Grand Pacific arising out of the $5,500,000 note acquired from Sterling Bank.

Class 3 - shall consist of the Disputed Secured Claims of Grand Pacific arising out of the $1,000,000 note acquired from Sterling Bank.

Class 4 - shall consist of the Disputed Secured Claims of Grand Pacific arising out of its $5,300,000 mortgage.

Class 5 – shall consist of the holders of Allowed Unsecured Claims.

Class 6 - shall consist of Holders of any or all Allowed Interests in the Debtors.

## ARTICLE III

## TREATMENT OF CLAIMS AND CLASSES UNDER THE PLAN

3.1    Unclassified Claims:

(a)    General Administrative Expense Claims: General Administrative Expense Claims include claimants who have filed an Administrative Proof of Claim for the actual and necessary costs and expenses incurred during the Chapter 11 case prior to the Effective Date ("Administrative Bar Date"), other than the 20-day Vendor Claims.  Under the Plan, all General Administrative Expense Claims shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court upon the later of (a) the Effective Date, (b) the date upon which there is a Final Order allowing such Administrative Expense Claim or any other date specified in such Order, or (c) as may be agreed upon between the holder of such Administrative Expense Claim and the Debtor.

(b)    Administrative Professional Fee Claims: All entities seeking an award by the

10

Bankruptcy Court of professional fees or of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code ("Professional Fee Claims"), (a) shall file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date within the time proscribed by the Court so that such application can be considered for allowance at the Confirmation Hearing, and (b) if granted, such an award by the Bankruptcy Court shall be paid in such amounts as allowed by the Bankruptcy Court, (i) on the later of the Effective Date or the date such Administrative Professional Fee Claim becomes Allowed, or (ii) upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Professional Fee Claim and the All Administrative Professional Fee Claims for services rendered in connection with this Chapter 11 Case and the Plan after the Confirmation Date, including, without limitation, those relating to the occurrence of the Effective Date and the resolution of Disputed Claims, shall be paid by the Disbursing Agent upon receipt of an invoice therefore, without the need for further Bankruptcy Court authorization or entry of a Final Order.  If the Reorganized Debtors and any Professional Persons cannot agree on the amount of post-Confirmation Date fees and expenses to be paid to such Professional Persons, such amount shall be determined by the Bankruptcy Court.

Allowed Professional Fee Claims shall be paid from the Plan Fund Account in accordance with the foregoing provisions.

(c)    United States Trustee's Fees: Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. § 1930(a)(6) shall be paid in full, in Cash, in such amount as they are incurred in the ordinary course of business by the Debtor.  The Debtors shall be responsible,

through the entry of a final decree closing the case for the payment of United States Trustee quarterly fees, and pursuant to 31 U.S.C. § 3717, any interest assessed on unpaid Chapter 11 quarterly fees charged, assessed at the interest rate in effect as determined by the Treasury Department as the charges become past due, however, if payment of the full principal amount is received within thirty (30) days of the date of the notice of initial interest assessment, the interest assessed will be waived.

(d)     <u>Allowed Priority Tax Claims</u>: Allowed Priority Tax Claims pursuant to Section 507(a)(8) of the Bankruptcy Code, including any real estate tax Claims of the City of White Plains,  shall be paid in full in cash on the Effective Date in full and final satisfaction of its claims as against the Debtors.

3.2     <u>Classified Claims</u>:

(a)     <u>Class 1</u>: Class 1 consists of all Allowed Non-Tax Priority Claims ("Priority Claims").  The Debtor shall pay to Holders of Class 1 Claims the amount of their Allowed Claim in full and in cash on the Effective Date, in full and final satisfaction of its claims as against the Debtor.  Class 1 Claims are not impaired under the Plan, are not entitled to vote on the Plan, and are deemed to accept the Plan.

(b)     <u>Class 2</u>: Class 2 consists of the Disputed Secured Claims of Grand Pacific arising out of the $5,500,000 note acquired from Sterling Bank. The Debtors, under the Adversary Proceeding, seek to, inter alia, expunge, equitably subordinate, or reclassify as Interests the Class 2 Claim in its entirety. In the event that the Debtors are successful in expunging the Class 2 Claim in its entirety, Class 2 shall receive no distribution under this Plan and its judgment liens, and any and all obligations arising under the underlying judgment, shall be deemed extinguished, null and void and of no further force or effect. In the event that Class 2 Claims are either reduced

or subordinated to the Claim of other creditors, such reduced or subordinated Class 2 Claims will be granted a second priority lien upon the Property, subject to the first priority liens being granted Construction Lender, on the Effective Date, and shall be paid in full in such amounts as may be Allowed by the Bankruptcy Court, with interest to accrue thereon at the Federal judgment rate of interest under 28 U.S.C. 1961, from the future sale(s) of the Property as such funds become available after payment of all amounts to be owed Construction Lender under the Construction Loans, all Allowed Administrative, Professional Fee Claims and Priority Claims, if any no later than 5 years after the Effective Date.   In the event that Class 2 Claims are reclassified as Interests, Class 2 shall have no further lien or Secured Claim against the Debtors or the Property, such liens to be stricken from the Westchester County land records and shall be treated in accordance with the Debtors' operating agreements. Class 2 Claims are Impaired under this Plan and are entitled to vote on this Plan.

Class 3: Class 3 consists of the Disputed Secured Claims of Grand Pacific arising out of the $1,000,000 note acquired from Sterling Bank. The Debtors, under the Adversary Proceeding, seek to, inter alia, expunge, equitably subordinate, or reclassify as Interests the Class 3 Claim in its entirety. In the event that the Debtors are successful in expunging the Class 3 Claim in its entirety, Class 3 shall receive no distribution under this Plan and its judgment liens, and any and all obligations arising under the underlying judgment, shall be deemed extinguished, null and void and of no further force or effect. In the event that Class 3 Claims are either reduced or subordinated to the Claim of other creditors, such reduced or subordinated claims will be granted a third priority lien upon the Property, subject to the first priority liens being granted Construction Lender and second priority lien, if applicable, being granted on account of Class 2 Claims on the Effective Date, and shall be paid in full in such amounts as may be Allowed by the

Bankruptcy Court, with interest to accrue thereon at the Federal judgment rate of interest under 28 U.S.C. 1961, from the future sale(s) of the Property as such funds become available after payment of all amounts to be owed Construction Lender under the Construction Loans, all Allowed Administrative, Professional Fee Claims, Priority Claims, and Class 2 Claims if any, no later than 5 years after the Effective Date.  In the event that Class 3 Claims are reclassified as Interests, Class 3 shall have no further lien or Secured Claim against the Debtors or the Property, such liens to be stricken from the Westchester County land records and shall be treated in accordance with the Debtors' operating agreements. Class 3 Claims are Impaired under this Plan and are entitled to vote on this Plan.

Class 4: Class 4 consists of the disputed Secured Claims of Grand Pacific arising out of its approximate $5,300,000 mortgage. The Debtors, under the Adversary Proceeding, seek to, inter alia, expunge, offset, reduce, subordinate or reclassify as Interests the Class 4 Claim in its entirety. In the event that the Debtors are successful in expunging the Class 4 Claim in its entirety, Class 4 shall receive no distribution under this Plan and its mortgage liens and Secured Claims against the Property and any and all obligations arising under the Grand Pacific mortgage, shall be deemed extinguished, null and void and of no further force or effect, with such liens to be stricken from the Westchester County land records. In the event that Class 4 Claims are reduced or subordinated to the Claims of other creditors, such reduced or subordinated Claims will be granted a fourth priority lien upon the Property, subject to the first priority liens being granted Construction Lender and, if applicable, the second and third priority liens, if any, being granted to Class 2 and 3 on the Effective Date, and shall be paid in full in such amounts as may be Allowed by the Bankruptcy Court, with interest to accrue thereon at the Federal judgment rate of interest under 28 U.S.C. 1961, from the future sale(s) of the Property as

such funds become available after payment of all amounts to be owed Construction Lender under the Construction Loans, all Allowed Administrative, Professional Fee Claims, Priority Claims, Class 2 and 3 Claims if any, no later than 5 years after the Effective Date.  In the event that Class 4 Claims are reclassified as Interests, Class 4 shall have no further lien or Secured Claim against the Debtors or the Property, such liens to be stricken from the Westchester County land records and shall be treated in accordance with the Debtors' operating agreements. Class 4 Claims are Impaired under this Plan and are entitled to vote on this Plan.

(a)      Class 5:  Class 5 consists of the holders of Allowed General Unsecured Claims. Holders of Allowed Class 5 Claims shall receive 100% of their Allowed Class 5 Claim with interest at the Federal judgment rate of interest under 28 U.S.C. 1961 as of the Petition Date, in Pro Rata distributions, from the future sale(s) of the Property as such funds become available after payment of all amounts due to Construction Lender under the Construction Loans, all Allowed Administrative, Professional Fee Claims, Priority Claims, Class 2, 3 and 4 Claims, if any, no later than 5 years after the Effective Date. Class 5 Allowed Unsecured Claims are impaired pursuant to §1124 of the Bankruptcy Code and as such, are entitled to vote on the Plan.

(b)      Class 6: Holders of Allowed Class 6 Interests shall retain their Interests and receive, in accordance with the terms and provisions of the Debtors' operating agreements, the remaining proceeds from the sale(s) of the Property after payment in full of all sums due Construction Lender under the Construction Loans and all unclassified and classified, Allowed Claims in full as set forth in Article 3 of this Plan and subject to the payment of post-Confirmation Date Professional fees and expenses. Class 6 Interest holders are unimpaired and are deemed to have accepted the Plan.

3.3      Acceptance by Impaired Classes of Claims.  A Class shall be deemed to have

accepted the Plan if (i) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-third in amount of the Allowed Claims actually voting in such class have voted to accept the Plan and (ii) more than one-half in number of the Holders (other than any Holder designated under Section 1126(c) of the Bankruptcy Code) of such Allowed Claims actually voting in such class have voted to accept the Plan.

3.4     <u>Presumed Acceptance of the Plan</u>.  Classes 1 and 6 are deemed unimpaired under the Plan and therefore are deemed to accept the Plan under Section 1126(f) of the Bankruptcy Code.

3.5     <u>Full and Final Satisfaction</u>.  Subject to the occurrence of the Effective Date, the Debtors' performance of all of its obligations hereunder shall be in full and final satisfaction, settlement, release and discharge of all Claims against the Debtors.

3.6     <u>Substantive Consolidation</u>. Under the Plan, the creditors of both Debtors shall be paid from a combined source of funds as set forth hereinbelow. Accordingly, the Debtors seek to substantively consolidate their Chapter 11 Proceedings for Plan distribution purposes only pursuant to Section 105 of the Bankruptcy Code.

**ARTICLE IV**

**PLAN IMPLEMENTATION**

4.1     <u>Means for Execution</u>.  The Plan shall be funded from the Construction Loan proceeds and the sale(s) of the Property upon completion. The terms of the Construction Loan shall be agreed upon no later than 30 days after the Effective Date, i.e., completion of the Adversary Proceeding and any appeals thereon. The Debtors shall have 150 days after the Effective Date to close on the Construction Loan. The Debtors shall complete construction of the Property no later than 3 years after the Effective Date. The Debtors shall thereafter complete the sale(s) or permanent refinance of the Property no later than 5 years after the Effective Date. In

16

consideration for the Construction Loan, the Construction Lender shall be granted a first priority mortgage and security interest upon the Property, senior to all other Secured Claims, liens and Claims and Interests of any kind pursuant to section 364(d)(1) of the Bankruptcy Code.

4.2    Execution of Documents.  On the Effective Date, the Debtors, and any necessary party thereto, shall execute, release, and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

4.3    Filing of Documents.  Pursuant to sections 105, 1141(c), 1142(b) and 1146(a) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

4.4    Corporate Action.  Upon the entry of the Confirmation Order, all matters provided under the Plan involving the corporate structure of the Debtors shall be deemed authorized and approved without any requirement of further action by the Debtors, the Debtors' members, or the Debtors' boards of directors, managers, and/or managing members.

4.5    Provisions Concerning Distributions.

(a)    Transmittal of Distributions and Notices.  Any property or notice which a Person is or becomes entitled to receive pursuant to the Plan shall be delivered by regular mail, postage prepaid, in an envelope addressed to that Person at the address indicated on a properly filed Proof of Claim or, absent such a Proof of Claim, the address that is Scheduled for that Person. The distribution date shall be the date of mailing, and the property distributed in accordance with this Section shall be deemed delivered to such Person regardless of whether such property is

actually received by that Person.

(b)     <u>Manner of Payments under the Plan</u>.  Payments to be made pursuant to the Plan shall be made from the Plan Fund Account by check drawn on a segregated domestic bank account maintained by the Disbursing Agent.

(c)     <u>Fractional Cents</u>.  Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made.  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (up or down).

(d)     <u>Unclaimed Cash</u>.  Except as otherwise provided herein, in the event any Holder of an Allowed Claim fails to claim any distribution within six (6) months from the date of such distribution, such Holder of an Allowed Claim shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such cash was distributed shall be treated as a disallowed Claim.  In this regard, distributions to Holders of Allowed Claims entitled thereto shall be sent to their last known address set forth on a Proof of Claim filed with the Bankruptcy Court or if no proof of claim is filed, on the Schedules filed by the Debtor or to such other address as may be designated by a Creditor.  The Disbursing Agent and Reorganized Debtor shall use their collective best efforts to obtain current addresses for all Claimants.  All unclaimed cash shall be returned to the Reorganized Debtor.

(e)     <u>Disputed Payments or Distribution.</u>  In the event of any dispute between and among Holders of Allowed Claims (including the entity or entities asserting the right to receive the disputed payment or distribution) as to the right of any entity to receive or retain any payment or distribution to be made to such entity under this Plan, the Disbursing Agent may, in lieu of making such payment or distribution to such entity, remit the disputed portion of the

Claim into an escrow account or to a distribution account as ordered by a court of competent jurisdiction as the interested parties to such dispute may otherwise agree among themselves. Notwithstanding anything to the contrary, the Disbursing Agent shall make distributions on account of the undisputed portion of a Claim to such Claimants.

(f)     Setoffs.  Except as otherwise provided in the Plan, the Confirmation Order, or in agreements previously approved by Final Order of the Bankruptcy Court, the Estate may, pursuant to Section 553 of the Bankruptcy Code or applicable non-bankruptcy law, offset against any Claim and any distribution to be made on account of such Claim, any and all of the claims, rights and causes of action of any nature that the Debtor or the Estate may hold against the holder of such Claim; provided, however, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other action or omission of the Debtor or the Estate, nor any provision of this Plan shall constitute a waiver or release by the Debtor or the Estate of any such claims, rights and causes of action that the Debtor or the Estate may possess against such holder.  To the extent the Estate fails to set off against a Creditor and seek to collect a claim from such Creditor after a distribution to such Creditor pursuant to the Plan, the Estate shall be entitled to full recovery on their Claim against such Creditor.

## ARTICLE V

## RESOLUTION OF DISPUTED CLAIMS & RESERVES

5.1     Objections.  Any objection to the allowance of a Claim shall be in writing and may be filed with the Bankruptcy Court by the Debtor or any other party in interest at any time on or before the Effective Date, or within such other time period as may be fixed by the Bankruptcy Court.  Notwithstanding the foregoing, the Debtor shall file any and all objections to Claims no later than sixty (60) days after the Effective Date.

5.2    Amendment of Claims.    A Claim may be amended prior to the Effective Date only as agreed upon by the Debtor and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules. After the Effective Date, a Claim may be amended as agreed upon by the holder thereof and the Debtor to decrease, but not increase, the face amount thereof.

5.3    Estimation of Disputed Claims.    The Debtor shall seek an order or orders from the Bankruptcy Court, estimating the maximum dollar amount of Allowed and Disputed Claims in each Class of Claims, inclusive of contingent and/or unliquidated Claims, or otherwise determining and fixing the amount of the Disputed Claims reserve for each Class, and may seek to set the amount of any particular Claim for final allowance purposes pursuant to sections 105 and 502(c) of the Bankruptcy Code.  This estimate shall be used to calculate and fix distributions to holders of Allowed Claims and the amount of the respective Disputed Claims Reserve.  Such a procedure may also be utilized for General Administrative Expense Claims, Priority Tax Claims and Non-Tax Priority Claims.  In the event the Debtor seeks to estimate such Claims, Disputed Claims reserves shall be established for each such category of Claims.

5.4    Reserve for Disputed Claims.    The Debtor shall reserve for account of each holder of a Disputed Claim that property which would otherwise be distributable to such holder on such date were such Disputed Claim an Allowed Claim on the Effective Date, or such other property as the holder of such Disputed Claim and the Debtor may agree upon.  The property so reserved for the holder, to the extent such Disputed Claim is allowed, and only after such Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed to such holder.

5.5    Distributions to Holders of Subsequently Allowed Claims.    Unless another date is agreed on by the Debtor and the holder of a particular subsequently Allowed Claim, the Debtor

shall, within ten (10) days after an Order is entered by the Bankruptcy Court, and after such

Order becomes a Final Order, make such distribution consistent with the terms of the Plan.  With

respect to the Allowed amount of such theretofore Disputed Claim that is determined, the Debtor

will distribute to such holder with respect to such subsequently Allowed Claim that amount, in

cash, from the cash held in reserve for such holder and, to the extent such reserve is insufficient,

from any other source of cash otherwise available to the Debtor, equal to that amount of cash

which would have been distributed to such holder from the Effective Date through such

distribution date had such holder's subsequently Allowed Claim been an Allowed Claim on the

Effective Date.  The holder of a subsequently Allowed Claim shall not be entitled to any interest

on the Allowed amount of its Claim, regardless of when distribution thereon is made to or

received by such holder.

**ARTICLE VI**

**<u>EXECUTORY CONTRACTS</u>**

6.1    <u>Assumption of All Executory Contracts</u>.  Any contract that is executory, in whole

or in part, to which the Debtor are a party and which has not been rejected pursuant to Section

365 and 1123 of the Bankruptcy Code during the pendency of Chapter 11 case, shall be deemed

assumed as of the Effective Date.

**ARTICLE VII**

**<u>EFFECT OF CONFIRMATION</u>**

7.1    <u>Vesting of Property</u>.  On the Effective Date, title to and possession of any and all

property of the Estates, real or personal, shall be re-vested in the Reorganized Debtors [and

transferred to the Plan Funder] free and clear of all Liens, Claims, interests and encumbrances of

any kind, subject to and except as otherwise provided in the Plan.

21

7.2     Treatment of Equity Interests in Debtor.   Under the Plan, the Interests will be determined through the Adversary Proceeding and shall be treated in accordance with the controlling operating agreements of the Debtors. The Interests shall not receive any distribution of property of the Estates until the Construction Loans and all unclassified and Allowed Claims are paid in full in accordance with the terms of the Plan.

7.3     Waiver of Claims.   Upon the Effective Date, and only to the extent permitted by applicable law, and except as otherwise expressly provided in the Confirmation Order and/or this Plan, all Persons who have held, hold or may hold Claims against or Interests in the Debtors or the Estates shall be deemed, by virtue of their receipt of distributions and/or other treatment contemplated under the Plan, to have forever agreed not to (i) sue, or otherwise seek any recovery from the Debtors, the Reorganized Debtors or the Estates, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, based upon any act or occurrence or failure to act taken before the Effective Date arising out of the business or affairs of the Debtors, or (ii) assert any Claim, obligation, right, cause of action or liability which any such holder of a Claim against or Interests in the Debtors may be entitled to assert against the Debtors, the Reorganized Debtors or the Estates, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission, transactions or the occurrence taking place on or before the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or this Plan.  Nothing in this Plan shall, or shall be deemed to, release the Debtor or Reorganized Debtor from, or exculpate the Debtors or Reorganized Debtors with respect to their respective obligations or covenants arising pursuant to the Plan from willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts.

7.4    <u>Payment of Professional Persons for Post-Confirmation Date Services</u>.    The
reasonable compensation and out-of-pocket expenses incurred post-Confirmation by Professional
Persons shall be paid by the Reorganized Debtor within ten (10) days upon presentation of
invoices for such post-petition professional services.    All disputes concerning post-confirmation
fees and expenses shall be subject to Bankruptcy Court jurisdiction.

**ARTICLE VIII**

**<u>DISCHARGE AND EXCULPATION</u>**

8.1    <u>Discharge</u>.    The Debtors' discharge shall be governed by Section 1141(d) of the
Bankruptcy Code.

8.2    **<u>Exculpation</u>.    Subject to the occurrence of the Effective Date, neither the
Debtor, the Reorganized Debtors, Construction Lender nor any of their respective
members, officers, directors, general partners, managing agents, owners, or employees
(acting in such capacity) nor any professional person employed by the Debtor or the
Reorganized Debtor, shall have or incur any liability to any entity for any action taken or
omitted to be taken in connection with or related to the formulation, preparation,
dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any
contract, instrument, release or other agreement or document created or entered into, or
any other action taken or omitted to be taken in connection with this Chapter 11 Case or
the Plan.    From and after the Effective Date, a copy of the Confirmation Order and the
Plan shall constitute and may be submitted as a complete defense to any claim or liability
satisfied, discharged and released pursuant to Article 8 of the Plan; provided, however,
that nothing in the Plan shall, or shall be deemed to, release the Debtor, Reorganized
Debtor or Construction Lender from, or exculpate the Debtor, Reorganized Debtor or
Construction Lender with respect to, their respective obligations or covenants arising**

23

**pursuant to the Plan from willful misconduct, gross negligence, breach of fiduciary duty, breach of contract, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts.  If the Plan is confirmed containing releases of liability as to the Debtor, the Reorganized Debtor and the Construction Lender, Creditors will be unable to pursue any claims that are discharged under the Plan, but Creditors can pursue claims against the Debtor, the Reorganized Debtor or the Construction Lender that may arise in the future, or pursuant to the Plan. Any such liability against the Debtor's professionals will not be limited to their respective clients contrary to the requirement of DR 6-102 of the Code of Professional Responsibility.**

8.3    <u>Injunction</u>.  Except as otherwise expressly provided in the Plan, any and all entities who have held, hold or may hold Claims or Interests against or in the Debtor shall, as of the Effective Date, be enjoined from:

(a)    commencing, conducting, or continuing, in any manner, any suit, action, or other proceeding of any kind (including, without limitation, in any judicial, arbitral, administrative or other forum) against the Debtor arising out of any act or omission of the Debtor;

(b)    enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collection or otherwise recovering by any manner or means, whether directly or indirectly, or any judgment, award, decree, or order against the Debtor with regard to such entities' Claim against the Debtor;

(c)    creating, perfecting or otherwise enforcing, in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the property of the Debtor, or any successor-in-interest to the Debtor;

(d)    asserting any set off, right of subrogation or recoupment of any kind, directly or

indirectly, against any obligation due the Debtor, the property of the Debtor, or any successor-in-interest to the Debtor; and

(e)    acting in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

## ARTICLE IX

## RETENTION OF JURISDICTION

9.1    The Debtor and such other applicable parties in interest as set forth in this Plan reserve the right, as set forth in this Plan, to institute preference and fraudulent conveyance actions, and object to the allowance of Claims for a period of sixty (60) days after the Effective Date.

9.2    The Bankruptcy Court shall retain jurisdiction of this Chapter 11 Case:

(a)    To determine all controversies relating to, or concerning, the allowance of Claims upon objection to such Claims by any party in interest;

(b)    To determine requests for payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including any and all applications for compensation for professional and similar fees;

(c)    To determine and, if necessary, liquidate, any and all Claims arising from the rejection of any executory contracts;

(d)    To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C. Sections 157 and 1334;

(e)    To determine all disputed, contingent or unliquidated Claims;

(f)    To modify this Plan pursuant to Section 1127 of the Code, or to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order to the

extent authorized by the Code;

(g)     To make such orders as are necessary or appropriate to carry out the provisions of this Plan;

(h)     To resolve controversies and disputes regarding the interpretation or enforcement of the terms of this Plan;

(i)     To fully adjudicate the Adversary Proceeding; and

(j)     To enter a final decree closing the Chapter 11 Cases.

## ARTICLE X

## GENERAL/MISCELLANEOUS PROVISIONS

10.1     Modification of the Plan.  The Debtors reserve the right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the entry of the Confirmation Order. After the Confirmation Order is entered, the Debtor may, subject to an order of the Bankruptcy Court, and in accordance with Section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

10.2     Conditions to the Effective Date of the Plan.  The Plan shall not become effective unless and until the following conditions shall have been satisfied or waived:

(a)     the Confirmation Order shall have been entered by the Bankruptcy Court;

(b)     the Adversary Proceeding and any appeals thereon shall have been concluded; and

(c)     all actions, other documents and agreements necessary to implement the Plan shall have been effected or executed and delivered.

26

10.3    Exemption from Transfer Taxes.  Pursuant to Section 1146(a) of the Bankruptcy Code, to the greatest extent permitted: (i) the issuance, transfer, or exchange of notes or equity securities under the Plan; (ii) the creation of any mortgage, deed of trust, lien, pledge, or other security interest; (iii) the making or assignment of any contract, lease or sublease; or (iv) the making or delivery of any deed or other instrument of transfer or other consideration under, in the furtherance of, or in connection with this Plan, including, without limitation, the post-Effective Date financing of the Property as contemplated herein and any other payments and transfers pursuant to the Plan by the Debtor to the Construction Lender, are exempt from and will not be subject to any stamp tax, or other similar tax or any tax held to be a stamp tax or other similar tax by applicable law.

All filing officers (including without limitation, the Office of the City Register of the City of New York) shall be, and hereby are directed to: (i) accept for recording and record, any and all deeds and other documents evidencing and/or relating to the transfer of the Property which are presented to them for recording, immediately upon presentation thereof, with regard to the transactions effectuated pursuant to the Plan, without the payment of any New York State Real Estate Transfer Tax imposed under Article 31 of the New York State Tax Law, any New York City Real Property Transfer Taxes under section 11-2102 of the New York City Administrative Code, any mortgage recording tax including without limitation relating to any financing obtained by the Plan Funder or its designee in connection with the transfer of the Property to and/or any financing or refinancing of the Property as referenced in the first paragraph of page 2 of the Plan Term Sheet annexed hereto as Exhibit B or any other tax within the purview of section 1146(a) of the Bankruptcy Code, and without the requirement of presentation of any affidavit or form with respect to any tax imposed under Article 31 of the New York State Tax Law, any New York

27

City Real Property Transfer Taxes under section 11-2012 of the New York City Administrative Code with respect to the transactions effectuated pursuant to the Plan; and (ii), upon being presented with notice of the occurrence of the Effective Date, cancel and discharge of record all liens, encumbrances, claims and other adverse interests in or against the Property except as may be expressly permitted in writing by the transferee of the Property under the Plan, which shall not be canceled and shall continue and remain in full force and effect.

All governmental authorities and any other taxing authorities shall be permanently enjoined from the commencement or continuation of any action to collect from the Property, the Debtors, the Reorganized Debtors or any transferee of the Property pursuant this Plan, any taxes from which the transactions effectuated pursuant to this Plan are exempt, pursuant to and in furtherance of section 1146(a) of the Bankruptcy Code, including but not limited to, New York State Real Estate Transfer Taxes, and applicable mortgage recording tax, and any penalties, interest, or additions to any tax related thereto.

The Westchester County Register's office shall record the deed(s) of the Property, and other similar conveyance documents required to be delivered under the Plan without the payment of any stamp tax, transfer tax, or similar tax, and without the presentation of affidavits, instruments, or returns otherwise required for recording or filing pursuant to section 1146(a) of the Bankruptcy Code.

10.4    Withdrawal or Revocation of the Plan.    The Debtor shall not have the right to revoke or withdraw the Plan prior to or after the Confirmation Date absent an order of the Bankruptcy Court authorizing such revocation or withdrawal on proper notice to all creditors and parties in interest.

10.5    <u>Conditions to Withdrawal, Modifications and Amendments</u>.    Any act to amend, modify, revoke or withdraw the Plan shall require the consent of the Debtors and, following the entry of the Confirmation Order, authorization of the Bankruptcy Court.    The Bankruptcy Court shall have sole and exclusive jurisdiction over any disputes regarding the foregoing.

10.6     Notices.  All notices and correspondence concerning the Plan or any agreement referenced in the Plan should be forwarded in writing to:

If to the Debtors:

> DELBELLO DONNELLAN WEINGARTEN
> WISE & WIEDERKEHR, LLP
> One North Lexington Avenue
> White Plains, New York 10601
> (914) 681-0200
> Attn: Jonathan S.  Pasternak, Esq.

10.7     Post-Effective Date Powers.     After the Effective Date, the powers of the Reorganized Debtor shall include, but not be limited to, the following:

(a)     Review of all claims and proposed distributions to Creditors pursuant to the Plan;

(b)     Review and participation in all pending and further litigation before the Bankruptcy Court;

(c)     Authority to make any objections to Claims, where appropriate, as well as authority to commence adversary proceedings on behalf of the Estate with respect to avoidance actions under Sections 547 through 552 of the Bankruptcy Code; and

(d)     Such other responsibilities and obligations as may be vested in the Debtor or as may be assumed pursuant to an order of the Bankruptcy Court or pursuant to this Plan or the Bankruptcy Code.

10.8     Post-Confirmation Reports and Fees.  The Debtor or the Reorganized Debtor shall be responsible for filing post-confirmation disbursement reports with the Bankruptcy Court and shall pay all quarterly fees required under 28 U.S.C. Section 1930 until the earlier of (a) conversion or dismissal of this Chapter 11 Case or (b) entry of a final decree closing this Chapter 11 Case, and paying such fees as may be levied by the U.S. Trustee pursuant to 28 U.S.C. Section 1930 as are assessed.

10.9    Preservation of Insurance.  The discharge and release of the Debtor as provided in this Plan shall not diminish or impair the enforceability of any insurance policies that may cover Claims against the Debtor or other Person.

10.10    Article and Section References.    Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan; words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

10.11    Payment Dates.  If any payment or act under the Plan is required to be made or falls on a date which shall be a Saturday, Sunday or a legal holiday, then the making of such payment or performance of such act may be completed on the next succeeding business day, but shall be deemed to have been completed as of the required date.

10.12    Applicable Law.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the law of the State of New York.

10.13    Successors and Assigns.    The rights and obligations of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

10.14    Reservation of Rights.    Neither the filing of this Plan, nor any statement or provision contained herein, shall be nor be deemed to be an admission against interest.  In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside this Chapter 11 Case.

31

10.15   <u>Severability</u>.  Except as to terms which would frustrate the overall purpose of this Plan, should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

10.16   <u>Confirmation Order</u>.  The Confirmation Order shall ratify all transactions effected by the Debtor during the period commencing on the Petition Date and ending on the Confirmation Date except for any acts constituting willful misconduct or gross negligence or any acts in violation of the MB Settlement Agreement or the Hermes Agreement.

10.17   <u>Interpretation, Rules of Construction, Computation of Time, and Choice of Law</u>.

(a)      The provisions of the Plan shall control over any descriptions thereof contained in the Disclosure Statement.

(b)      Any term used in the Plan that is not defined in the Plan, either in Article I (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein.  The definitions and rules of construction contained herein do not apply to the Disclosure Statement or to any Exhibits to the Plan except to the extent expressly so stated in the Disclosure Statement or in such Exhibit to the Plan.

(c)      The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular Article, Section, subsection or clause contained in the Plan, unless the context requires otherwise.

(d)      Unless specified otherwise in a particular reference, all references in the Plan to Articles, Sections and exhibits are references to Articles, Sections and Exhibits of or to the Plan.

(e)      Any reference in the Plan to a contract, document, instrument, release, bylaw, certificate, indenture or other agreement being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

(f)      Any reference in the Plan to an existing document or exhibit means such document or exhibit as it may have been amended, restated, modified or supplemented as of the Effective Date.

(g)      Captions and headings to Articles and Sections in the Plan are inserted for the convenience of reference only and shall neither constitute a part of the Plan nor in any way affect the interpretations of any provisions hereof.

(h)      Whenever from the context it is appropriate, each term stated in either the singular of the plural shall include both the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter.

(i)      In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(j)      All Exhibits to the Disclosures Statement are incorporated into the Plan, and shall be deemed to be included in the Plan, regardless of when filed.

(k)      Subject to the provisions of any contract, certificate, bylaws, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

(l)      The terms of the Hermes Agreement are hereby incorporated by reference.

10.18   <u>No Admissions</u>.      Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including without limitation, any liability on or treatment of any Claim, or the propriety of a Claim's classification.

Dated:    New York, New York
            June 23, 2015

                                97-111 HALE, LLC
                                100-114 HALE, LLC


                        By      <u>*/s/ Eli Bobker*                  </u>
                                Manager of Checkmate Holdings, LLC,
                                Managing Member